EVANGELICAL LUTHERAN ST. PAUL'S CONGREGATION, Respondent, vs. HASS, Appellant.

*March 16—April 11, 1922.*

*Religious societies: Right to remove pastor: Control by courts: Contract of hire: Temporal or doctrinal matter: Advisory report of board of arbitration: Removal by entire congregation.*

1. The right of a religious congregation to remove its pastor with or without cause is a temporal right unless otherwise clearly specified in the charter or by-laws of the congregation.
2. Civil courts will apply civil remedies to the disputes of religious bodies unless the laws of such bodies provide for specific ecclesiastical remedies.
3. Where the constitution of a religious society provided that all matters except those of faith and doctrine should be decided by a majority of the congregation, the discharge of a pastor is subject to a majority vote of the congregation.
4. The hiring of a minister is a temporal and not a doctrinal matter, and rests in contract express or implied; and where defendant was hired for an indefinite time, the article of the constitution that he was subject to removal for cause was imported into the contract of hiring.
5. Where the constitution of a religious society provided that scandalous life, in spite of due admonition, should be ground for removing a pastor from office, his removal because of wilful unfaithfulness in the performance of his office (which was another cause for removal under the constitution) was not illegal because of failure to admonish him.
6. In proceedings to remove a pastor of a religious organization, where it was decided by vote of the congregation that the report of an arbitration board, chosen under a clause in the

constitution of the society, to the congregation should be advisory only and that the congregation should act finally, and the pastor did not dissent therefrom, the subsequent report of the arbitration board was advisory merely and not binding on the congregation.

APPEAL from a judgment of the circuit court for Waukesha county: C. M. DAVISON, Circuit Judge. *Affirmed.*

Action by the plaintiff congregation, an independent religious organization, to compel the defendant, who had served as its pastor from August 25, 1918, up to October 21, 1921, to deliver up to it all property belonging to the organization in his hands, by reason of his having been its pastor, and perpetually enjoining him from in any manner in future interfering with any of the property or functions of the congregation or of assuming or exercising the functions of its pastor.

The complaint alleged that on October 21, 1921, the congregation lawfully discharged the defendant as its pastor and so duly notified him. The answer denies that defendant was duly discharged and claims that he is still the lawful pastor of the plaintiff. The trial court found as facts:

"(1) That the plaintiff has been for many years and was at the time of the commencement of this action and at all times herein mentioned was and now is a corporation for religious purposes organized and existing under and by virtue of the laws of the state of Wisconsin, and is located in the city of Oconomowoc, Waukesha county, Wisconsin.

"2. That said plaintiff has a very large congregation with a membership of communicants of about seven hundred, and a membership entitled to vote under its organization and rules and regulations and constitution of about two hundred (200); and is the owner of property devoted to its purposes to the value of nearly one hundred thousand ($100,000) dollars.

"3. That the organization of said plaintiff is congregational in character; that is, it is not subordinate to, connected with, or controlled by any synod or organization of other churches or congregations or any superior governing body of any kind whatsoever.

Evangelical Lutheran St. Paul's Cong. v. Hass, 177 Wis. 23.

"4. That under the constitution of the plaintiff the governing power or body of the plaintiff is a majority of the voting members of the congregation itself; that all temporal questions and all ecclesiastical and congregational affairs are under its constitution to be settled and determined by the vote of a majority of the voting members of the congregation; that a majority of the voting members of the congregation have the sole power to employ, hire, and remove or discharge a minister or pastor; that among other things the constitution provides that a pastor may be removed for proven wilful unfaithfulness in the performance of his office.

"5. That the constitution of the plaintiff further provides that no action by committees or a minority or less than the whole body of the congregation in meeting shall be binding upon the congregation and that all matters referred to or acted upon by a committee or less than the whole of the congregation in meeting assembled (that is, a quorum thereof) must at all times be referred to and brought before the congregation for a final decision.

"6. That the constitution also contains a provision for the appointment of arbitrators in certain cases therein specified, and provides that such arbitrators shall consist of three pastors and four laymen, each of the opposing parties to select one pastor and two laymen, and the two selected pastors to appoint the third.

"7. That it was the dominant thought, purpose, meaning, and intention of the framers of the constitution of the plaintiff to provide that the final power to settle all ecclesiastical and congregational affairs, and especially the selection or removal of the pastor or teacher, should be solely in a majority of the voting members of the congregation and not elsewhere; and that the constitution of the plaintiff does in fact so provide; that the provision of the constitution for the appointment of arbitrators was not intended to and does not cover the matter of the removal of a pastor or teacher.

"8. That on the 25th day of August, 1918, the plaintiff extended a call to the defendant to become its pastor in accordance with the provisions of its constitution as hereinbefore found, and that the defendant accepted said call and entered upon the performance of the duties of his employment; that said call was in fact a temporal contract of hiring and not a divine call.

"9. That about the month of February, 1921, charges were made by members of the congregation that the defendant had been wilfully unfaithful in the performance of his office; that said charges were made verbally in numerous meetings of the congregation, and that the facts constituting such wilful unfaithfulness in performance of his office were fully and repeatedly stated in such meetings of the congregation in the presence of the defendant; that he had from the beginning full and complete knowledge as to the facts with which he was charged, and which facts, it was claimed by his accusers, constituted his wilful unfaithfulness in the performance of his office; that during numerous meetings of the congregation between about the 1st of February, 1921, and about the 1st of August, 1921, said charges and the facts constituting the same were repeatedly and fully discussed and considered in repeated and numerous meetings of the congregation, both by those who made and supported said charges and those who denied the sufficiency or validity thereof, including the defendant himself.

"10. That shortly prior to August 1st said charges were before the congregation for consideration; that at a meeting of the congregation it was decided to call upon a board of arbitration to consider said charges and advise the congregation; that thereafter a board of· arbitration was selected, but that said board of arbitration was not selected in accordance with the provisions of the constitution of the plaintiff, in that the action of the church council to whom the matter of appointing arbitrators was referred did not report their action back to the congregation, and in that their action was not at any time brought before the congregation for a final decision; that a board of arbitration, so called, consisting of three pastors and four laymen, was appointed or selected by the church council without having such appointment or selection referred back to and brought before the congregation for a final decision, and that in fact such so-called board of arbitration was selected in its entirety by said church council; that on August 18, 1921, written charges charging the defendant with wilful unfaithfulness in the performance of his office were presented to and filed with said so-called board of arbitration; that said so-called board of arbitration at all its meetings met with the voting members of the congregation of the plaintiff either at regularly

called meetings of said congregation or at due adjournments of regularly called meetings thereof; that the charges filed in writing as aforesaid, with the specifications of fact upon which the general charge was based, were the same identical accusations of fact which had been under consideration and discussion by the congregation and the defendant in meetings of the congregation between about February 1, 1921, and about August 1, 1921, as hereinbefore found; that the defendant was for many months prior to the action of the congregation upon said charges as hereinafter found fully cognizant thereof and was in no manner taken by surprise; that, on the contrary, he had full and complete opportunity to examine said charges, prepare his defense, and be heard thereon; that on the second occasion when said so-called board of arbitration met with the said congregation as hereinbefore found, and before the actual consideration of the merits of said charges was entered upon, the question was raised as to whether the decision, findings, or report of said so-called board of arbitration would be final and conclusive upon the question of the validity of said charges and the removal of the pastor, the defendant, or advisory to the congregation merely; that it was finally agreed without dissent in said meeting of the congregation with said board present, and was so announced to the congregation and all concerned, including the defendant who was present, by the chairman of said board, who was also acting as chairman of the meeting of the congregation at the time, that the decision, report, or findings which said board was to make would be advisory only and should be submitted to the congregation for its action or decision thereon; that neither the defendant nor any member of the voting body of said congregation objected thereto.

"11. That thereafter the said board met with the voting members of the congregation in regularly adjourned meeting assembled and discussed and considered said charges against the defendant; that the defendant had a full and complete hearing and full and complete opportunity to present his defense, and that he was actually present at all times when said board met with said voting members of the congregation of the plaintiff in meeting assembled as aforesaid; that thereafter the said board reported to the congregation, finding in effect that said charges were not sustained, but

that said report was intended by the said board to be for the advice of the congregation only and was not by said board regarded or considered by said congregation when made as a decision binding upon the congregation.

"12. That after the making of said advisory report by said board the said congregation, in regularly assembled and called meeting, by a clear majority of its members, found the defendant guilty of said charges, and thereafter and at a subsequent meeting, also duly and regularly called and assembled, by a resolution duly adopted by a clear majority of its voting members, removed and dismissed the defendant as pastor, such removal to take effect at once, that is to say, on October 27, 1921, with the privilege to the defendant, however, to have the use of the house then occupied by him until December 1, 1921.

"13. That all of the meetings of the congregation since a short time previous to August 1, 1921, were meetings held in accordance with the constitution, rules, and regulations of the plaintiff, and were conducted fairly and in an orderly and parliamentary manner.

"14. That notwithstanding the action of the congregation of the plaintiff as hereinbefore found, the defendant has refused to deliver up possession of the property belonging to the plaintiff and has refused and still refuses to vacate the house belonging to the plaintiff and occupied by him, and still claims to be the pastor of the plaintiff, and threatens and gives out that he will continue to act as such pastor and conduct religious services and perform other duties as such pastor; that he has given notice that he intends to keep possession of the property belonging to the plaintiff, and that unless enjoined and restrained and coerced by the order of this court he will in fact continue to attempt to exercise the rights, duties, and powers as pastor of the plaintiff, to retain possession of its property, and to interfere with the performance of the rights, powers, and duties of a pastor of the plaintiff, the congregation, and the exercise of the privileges of such a pastor by any other person who may be requested to exercise, perform, and enjoy such rights, duties, and privileges by the plaintiff; that unless enjoined, restrained, and coerced by the order of this court he will cause the plaintiff great and irreparable injury which cannot be compensated in money, and that the plaintiff has in fact no adequate remedy at law."

As conclusions of law the court found:

"1. That all of the acts and proceedings of the plaintiff in removing said defendant as pastor were taken in compliance with and conformity to the constitution, by-laws, rules, and regulations of the plaintiff; that the said defendant was found guilty of wilful unfaithfulness in the performance of his office in accordance with the constitution, rules, regulations, and by-laws which govern the plaintiff, and after having had a full and fair hearing and full and complete opportunity to make his defense; and that this court should not pass upon, consider, or determine the merits of the charges made.

"2. That the defendant was duly and regularly removed as pastor by the plaintiff acting in accordance with its constitution, rules, regulations, by-laws, and procedure, and acting within its powers.

"3. That the plaintiff is entitled to judgment perpetually enjoining the defendant, his associates, servants, agents, and employees, from exercising or enjoying any of the rights, powers, duties, privileges, or perquisites of pastor of the plaintiff; perpetually enjoining and restraining the defendant, his associates, servants, agents, and employees, from in any manner retaining possession of, interfering with, assuming control of, or exercising any authority over any property of the plaintiff, real or personal; directing and enjoining and ordering the defendant, his associates, servants, agents, and employees, to forthwith turn over to the trustees of the plaintiff corporation any and all property of the plaintiff now in his possession, including keys, communion service, and records, and also all real estate of the plaintiff corporation, including the residence belonging to the plaintiff and occupied by him; that the defendant be further perpetually enjoined and restrained from preaching either in the church, school, or other places belonging to the plaintiff; that the defendant be further perpetually enjoined and restrained from assuming in any manner whatsoever to act as the pastor of the plaintiff corporation, and in particular from assuming to preach or hold church services or conduct a parochial school in any place whatsoever, giving out or pretending or assuming to so preach or conduct the same as the pastor of or in the name of the plaintiff corporation; that the defendant be perpetually enjoined and restrained from in any manner whatsoever interfering

with the right of the plaintiff to obtain either temporarily or permanently the services of such other pastor or pastors, teacher or teachers, as it may desire, and from using any threats, warnings, or means whatsoever to prevent or discourage any pastor or pastors or teacher or teachers with whom the plaintiff may be or become hereafter in negotiation from serving the plaintiff either temporarily or permanently as such pastor or teacher or teachers.

"4. That the judgment in this action should provide that the defendant turn over all of the property of the plaintiff to its trustee and vacate the real estate and house of the plaintiff now occupied by him within ten (10) days after service upon his attorney of a notice of entry of judgment, and that in case of the failure or refusal of the defendant to so turn over said property and vacate said premises the plaintiff may forthwith move upon the foot of the judgment herein for an order of this court dispossessing the defendant and carrying out the provisions of this judgment in that regard, or for such other order or relief as may be proper.

"5. That said judgment provide further that the plaintiff have and recover its costs and disbursements of this action to be taxed."

From a judgment entered accordingly the defendant appealed.

*Ernst von Briesen* and *George A. Affeldt,* both of Milwaukee, for the appellant.

For the respondent there was a brief by *Shannon & Cronin* of Oconomowoc and *Lockney & Lowry* of Waukesha, and oral argument by *T. T. Cronin, A. D. Shannon,* and *Henry Lockney.*

VINJE, C. J.    The findings of fact made by the trial court support the judgment entered, but the defendant claims that the findings are not supported by the evidence, and especially in two respects.    It is claimed that the call of the minister was a divine call that could be terminated only by a unanimous vote of the congregation, and further that the constitution of the congregation provided for a court of arbitra-

tion, which was invoked in this case, and which court acquitted the defendant from the charge of "proven wilful unfaithfulness in the performance of his office," which was the charge sustained by a vote of the congregation. The case is practically barren of legal questions. That the defendant was entitled to be tried by the fundamental law of the congregation is not questioned by either side. The defendant claims he was not so tried—the plaintiff insists he was, and the court so found. No doctrinal questions are involved, though the evidence touches a number of them. The right of a congregation to remove its pastor with or without cause is a temporal right unless otherwise clearly specified in the charter or by-laws of the congregation. Civil courts will apply civil remedies to the disputes of religious bodies unless the laws of such bodies provide for specific ecclesiastical remedies. In the instant case we fail to find any ecclesiastical remedies in the constitution of the plaintiff that apply to the situation. A careful reading of that document discloses that only the following articles thereof can be said to have any application to the case:

### Article 11.

"The pastor can according to Christian form and order be removed from [by] the congregation. Sufficient cause for removing a pastor are:

"(a) Proven wilful unfaithfulness in the performance of his office;

"(b) Persistent adherence to false doctrine;

"(c) Scandalous life in spite of having been duly admonished."

### Article 25.

"The congregation as a whole has the highest authority in the external and internal administration of all ecclesiastical and congregational affairs. No arrangement or decision for the congregation or for a member as such, coming from a single person or from a body in the congregation, is valid, unless it was done in the name of the congregation and according to an authority granted by it; and whatever was arranged or decided by a few or more must at all times be

brought before the congregation for a final decision.    Espe-
cially should the election of the pastor or of any other officer
of the congregation at no time be left to a part of the con-
gregation but should be the business of the entire congrega-
tion."

### Article 28.

"At least one third of the voting members is necessary to
constitute a quorum.   In all non-essentials (Adiaphora),
that is, in such matters where the Word of God neither com-
mands nor forbids, the majority of the voting members
present rules.    (In all matters not already decided by the
Word of God the majority rules.)    The minority and the
absent members must yield to this majority."

### Article 33.

*"Court of Arbitration.*

"If at any time troubles should arise in this congregation,
upon which the congregation cannot come to a satisfactory
agreement, both parties shall elect a Christian court of ar-
bitration consisting of three pastors and four laymen, all of
which must agree with the confession of this congregation
and shall decide it according to the Word of God and the
symbolical books, to which decision both parties shall sub-
mit.    Such court of arbitration shall be elected in the fol-
lowing manner: Each of the opposing parties shall elect
one pastor and two laymen.    The two elected pastors shall
then appoint the third pastor."

### Article 34.

"Those articles of this constitution which like paragraph
2 pertain to faith and doctrine shall forever remain unalter-
able and irrepealable.    Alterations regarding the other par-
agraphs and additions may be made by a two-thirds majority
of a quorum, but such alterations shall not be in force until
their adoption has been confirmed in the following meeting."

It appears quite clearly from the above articles that, ex-
cept as to matters of faith and doctrine, it was the intention
that the congregation by a majority vote of a quorum should
rule.    The hiring of a minister is a temporal and not a doc-

trinal matter.    It rests in contract express or implied.    The
defendant was called for an indefinite time and was subject
to be removed for cause under article 11.    This article was
imported into the contract of hiring.    The congregation by
a large majority vote found him guilty of "proven wilful
unfaithfulness in the performance of his office" and dis-
charged him.

Charges were preferred against him in writing and he
was, as found by the trial court, given full opportunity to
defend himself.    We find nothing in the whole proceeding
that was contrary to the "Christian form and order" pro-
vided for in the constitution.

Some emphasis is placed by the defendant upon the fact
that he had never been "duly admonished."    It appears
from the constitution that no admonishment is prescribed
in case of "proven wilful unfaithfulness in office," which
was the charge sustained against him.

It may be a serious question whether the findings of ac-
quittal by the court of arbitration would not have been con-
clusive on the parties had it been regularly selected and had
it rendered its decision without any understanding that it
should be merely advisory.    A careful reading of the evi-
dence discloses that at the second meeting of the congrega-
tion with the arbitration board and before any report had
been made by it, after some discussion as to the effect of
the decision of the board, it was unanimously agreed that
the decision of the board should be advisory only and that
the congregation should act finally upon the matter.    This
result was announced by the chairman of the congregation
meeting, Mr. Moldenhauer, and affirmed by the chairman of
the board of arbitration and not dissented to by the defend-
ant, who was present.    Under such circumstances the trial
court properly held that the report of the arbitration board
was advisory merely and not final.    It was not until after
the decision of the board was received that the defendant
claimed it was final.

We reach the conclusion that the findings of fact made by the trial court are sustained by the evidence, and that the proper judgment was entered upon them.

*By the Court.*—Judgment affirmed.