OLSTON, Appellant, v. HALLOCK, Bishop, and others, Respondents.

*No. 154. Argued September 6, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 35.)

688

690

"...

692

694

For the appellant there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

For the respondents other than respondent Donald H. V. Hallock there was a brief by *Reinhart, Boerner, Van Deuren & Norris, S.C.,* attorneys, and *Paul V. Lucke* of counsel, all of Milwaukee, and oral argument by *Mr. Lucke.*

For the respondent Donald H. V. Hallock there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland, S.C.,* attorneys, and *Robert P. Harland* and *Richard C. Ninneman* of counsel, all of Milwaukee, and oral argument by *Mr. Ninneman.*

CONNOR T. HANSEN, J. The rules and procedures governing summary judgment are well established and have been so frequently stated by this court that no useful purpose would be served by again repeating them. *Jahns v. Milwaukee Mut. Ins. Co.* (1968), 37 Wis. 2d 524, 527, 155 N. W. 2d 674; *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 4, 5, 141 N. W. 2d 909.

A matter should not be determined by summary-judgment procedure when two conditions exist: (1) There are disputed facts; and (2) the disputed facts are material to the controlling legal issue or issues. *Huckstorf v. Vince L. Schneider Enterprises* (1968), 41 Wis. 2d 45, 163 N. W. 2d 190; *Strack v. Strack* (1961), 12 Wis. 2d 537, 107 N. W. 2d 632. The trial court properly and correctly determined that there was no substantial disputed issue of fact which would be the proper subject of a fact-finding proceeding; and that the disputed facts did not present a substantial or material issue related to the controlling legal issues presented. These findings are supported by the record and summary-judgment procedure was proper in this case.

Whether any of the "disputed facts" are "material" depends entirely upon the permissible scope of civil court intervention in the ecclesiastical decisions made in this case. The government of St. Paul's is presbyterial rather than congregational. It is governed by both local and national canons and constitutions, and both provide procedures for the termination of a pastoral relationship with a particular church. These rules contain both the causes for removal and the procedures to be followed. There appears to be no dispute in the facts as to the procedure followed and the decision ultimately made by the Bishop and the Standing Committee. In the instant case, the dispute which exists is one of law.

We would agree that there is a dispute in facts that go to the merits of the decision reached by the ecclesiastical tribunal. However, in the instant case, the trial court was correct in determining that it had no jurisdiction to review the merits of the determination of the ecclesiastical tribunal. Under the facts of this case, the "call" of Olston was not temporal in nature and civil court review is limited to determining whether the ecclesiastical tribunal had authority to proceed, and whether it proceeded according to its rules and procedures.

In *Watson v. Jones* (1872), 80 U. S. (13 Wall.) 679, 20 L. Ed. 666, at pages 728, 729, the court held:

". . . The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. . . ."

Later cases seem to have modified the rule set forth in *Watson, supra.* In *Kedroff v. Saint Nicholas Cathedral*

(1952), 344 U. S. 94, 116, 73 Sup. Ct. 143, 97 L. Ed. 120, discussing *Watson, supra,* the court stated:

". . . The opinion radiates . . . a spirit of freedom for religious organizations, an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Freedom to select the clergy, *where no improper methods of choice are proven,* we think, must now be said to have federal constitutional protection as a part of the free exercise of religion against state interference." (Emphasis supplied.)

The court in *Gonzales v. Roman Catholic Archbishop* (1929), 280 U. S. 1, 16, 17, 50 Sup. Ct. 5, 74 L. Ed. 131, held:

". . . Because the appointment is a canonical act, it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them. *In the absence of fraud, collusion, or arbitrariness,* the decisions of the *proper church tribunals* on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise." (Emphasis supplied.)

Wisconsin cases, although not numerous, have been in substantial accord with the decisions of the United States Supreme Court.

In *Hellstern v. Katzer* (1899), 103 Wis. 391, 396, 79 N. W. 429, this court held:

". . . This court has repeatedly disclaimed all right to determine mere questions of faith, doctrine, or schism, not necessarily involved in the enforcement of ascertained trusts or the determination of legal rights; and has also disclaimed any right of interference with mere church discipline, in the absence of any invasion of the legal rights of persons or property." [1]

[1] *See: Fadness v. Braunborg* (1889), 73 Wis. 257, 293, 41 N. W. 84; *Holm v. Holm* (1892), 81 Wis. 374, 382, 51 N. W. 579.

In *Evangelical Lutheran St. Paul's Congregation v. Hass* (1922), 177 Wis. 23, 187 N. W. 677, this court considered the status of a pastor under a congregational form of church government as distinguished from the presbyterial form of church government, as in the instant case, and at page 31 it is stated:

". . . The right of a congregation to remove its pastor with or without cause is a temporal right unless otherwise clearly specified in the charter or by-laws of the congregation. Civil courts will apply civil remedies to the disputes of religious bodies unless the laws of such bodies provide for specific ecclesiastical remedies. In the instant case we fail to find any ecclesiastical remedies in the constitution of the plaintiff [church] that apply to the situation. . . ."

In the instant case, the trial court found that the Bishop had authority under ecclesiastical law, to terminate Olston's position and that all proper procedures had been followed as set forth in Canon 40 of the local church, which was adopted pursuant to Canon 45 of the national church organization. We think it is clear that the plaintiff is seeking a civil tribunal review of the merits of the findings and decision of the Bishop and the Standing Committee, which determined that there was a serious disagreement existing between the pastor and the congregation as represented by its Wardens and Vestrymen, and that for the good of the church there must be an immediate dissolution of the pastoral relationship between St. Paul's and its pastor. Under both Wisconsin and federal case law, such a review in this case is outside the province of judicial review.

From our examination of the record, we are of the opinion that it cannot be said that the plaintiff's relationship with St. Paul's was terminated by either the Wardens or the Vestrymen.

In *Borgman v. Bultema* (1921), 213 Mich. 684, 182 N. W. 91, the court was considering civil jurisdiction to

review an ecclesiastical decision, under a presbyterial form of church government, relating to the termination of a pastoral relationship, and at page 703, it was stated:

" '. . . To assume such jurisdiction would not only be an attempt by the civil courts to deal with matters of which they have no special knowledge, but it would be inconsistent with complete religious liberty untrammeled by State authority. On this principle the action of the church authorities in the deposition of pastors and the expulsion of members is final. Where, however, a church controversy involves rights growing out of a contract recognized by the civil law, or the right to the possession of property, civil tribunals cannot avoid adjudicating these rights under the law of the land, having in view, nevertheless, the implied obligations imputed to those parties to the controversy who have voluntarily submitted themselves to the authority of the church by connecting themselves with it. Therefore, where it is admitted, as in this case, that property belongs to a particular church, and the only question is whether the defendant claiming to be pastor should be excluded from its use, this court will only consider whether the church has ordered his exclusion, not whether it was right in so doing. Neither will the court as a civil tribunal undertake to determine whether the resolution directing exclusion was passed in accordance with the canon law of the church, except in so far as it may be necessary to do so in determining whether it was, in fact, the church that acted.' *Morris Street Baptist Church v. Dart*, 67 S. C. 338 (45 S. E. 753, 100 Am. St. Rep. 727)."

When Olston accepted the "call" to St. Paul's, all the canons of both the local Diocese and the national church became a part of his pastoral contract. *Evangelical Lutheran St. Paul's Congregation v. Hass, supra; Watson v. Jones, supra.* This includes both local Canon 40 and national Canon 45. Olston contends Canon 45, and not Canon 40, applies. Section 4, Canon 45, states:

"This Canon shall not apply in any Diocese or Missionary District which has made, or shall hereafter make, provision by Canon upon this subject, nor in contraven-

tion of any right of any Rector, Minister, Parish, Congregation, or Vestry under the law of the Civil Authority."

The Diocese of Milwaukee has, through Canon 40, made "provision by Canon upon this subject." Therefore, Canon 45 does not apply and plaintiff-appellant's contentions must fail. Canon 40 sets out in detail the procedure and authority for the termination of a pastoral relationship.

In the early stages of the dispute, Olston, himself, stated that Canon 40 was controlling. The trial court found as "undisputed facts" that the church followed these procedures and gave Olston full and fair notice and an opportunity to be present with attorney on more than one occasion at the hearings; that Olston chose not to attend or defend himself. These findings are supported by the record. He cannot now raise his defenses in a civil tribunal. The trial court properly granted the defendants' motion for summary judgment.

Finally, we consider the issue of damages. Sec. 263.37, Stats., as it pertains to pleading libel and slander, states in part:

". . . it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff, . . ."

The trial court found that the pleading did not set forth a cause of action based on either slander or libel. This determination is correct. The plaintiff-appellant has not alleged the particular defamatory words alleged to have been spoken, that the words were false, or claimed any special damages. No cause of action is stated. *Lathan v. Journal Co.* (1966), 30 Wis. 2d 146, 140 N. W. 2d 417; *Schubert v. Richter* (1896), 92 Wis. 199, 66 N. W. 107; *Born v. Rosenow* (1893), 84 Wis. 620, 54 N. W. 1089.

Any other areas of potential damages are not properly before this court, and it is not to be implied from this opinion that a cause of action for such damages could be stated. The issue is not presented, and we do not reach it.

*By the Court.*—Judgment affirmed.