Thomas I. BLACK, Plaintiff-Appellant and
Cross-Respondent,

v.

ST. BERNADETTE CONGREGATION OF APPLETON, WISCONSIN;
Catholic Diocese of Green Bay;
Aloysius J. Wycislo, Defendants-Respondents,

Richard SCHERMERHORN, James M. Hyde, Roger Schneider, Marge Schnese, Judy Smits, Sue Taylor, Dottie Bauer, Aaron Dejardin, Rosemary Gomilla and Joseph Van Schyndel, Defendants-Petitioners and Cross-Appellants.

Court of Appeals

*No. 84–550. Submitted on briefs October 8, 1984.—
Decided November 20, 1984.*
(Also reported in 360 N.W.2d 550.)

For the appellant the cause was submitted on the briefs of *Bruce Chudacoff* and *Chudacoff & Leibzeit* of Appleton.

For the respondents the cause was submitted on the brief of *Philip R. Brehm, Bruce B. Deadman* and *Everson, Whitney, Everson & Brehm, S.C.,* of Green Bay.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.  Thomas Black appeals a summary judgment dismissing his breach of contract action against the St. Bernadette Congregation of Appleton, the Catholic Diocese of Green Bay, and Bishop Aloysius J. Wycislo. The trial court dismissed the action after it concluded that Black was terminated as principal of the St. Bernadette elementary school for ecclesiastical reasons. Black contends that a material issue of fact exists concerning the true motivation for his termination. Alternatively, he contends that the St. Bernadette Congregation is liable for his remaining salary even if the bishop terminated him for an ecclesiastical reason. Because Bishop Wycislo undisputedly terminated Black in order to end disunity and discord in the St. Bernadette Congregation, and because Bishop Wycislo acted in an ecclesiastical capacity, we affirm the summary judgment in favor of the Bishop and the Catholic Diocese of Green Bay. We also affirm the summary judgment in favor of the congregation because cause undisputedly existed to terminate Black under the contract.

The St. Bernadette Congregation hired Black as principal of its elementary school. A schism developed within the congregation when some church leaders opposed Black as principal and the parish priest supported him. The relationship between the parties further deteriorated when the priest dismissed the parish board of education during proceedings to consider whether to extend Black's employment contract. In an attempt to end the acrimonious dispute, Bishop Wycislo requested the resignation of the parish priest. He also would have requested the resignation of the parish board of education members if they had not already been dismissed. He also requested Black's resignation. When Black refused to resign, the Bishop terminated him. In the termination letter, the Bishop explained his decision in terms of the welfare of the congregation:

Mr. Black, I want to repeat what I indicated in my prior letter that I am acting in what I believe is the best interests of the parish. In doing so I am not basing my actions on any rumors or unresolved issues, but solely upon the fact that there is an unhealthy and deleterious disunity and discord in the parish. I have waited patiently for over a year for the leadership of the parish (Pastor, Board, Principal, etc.) to solve the discord and create Christian unity. You know as well as I do that this has not happened. The welfare of the community of St. Bernadette is paramount. I believe a complete change in leadership is necessary and I have acted accordingly.

In support of his summary judgment motion, the Bishop submitted an affidavit in this case in which he further discussed the circumstances of Black's termination. He stated that he dismissed Black in order to preserve the spiritual welfare of the St. Bernadette Congregation and to insure that the school would remain a viable entity. He cited a number of factors that he believed showed a great schism in the St. Bernadette Congregation and that could only be cured by the removal of all the disputants from positions of authority. The factors he cited were: (1) the school's declining enrollment; (2) the parish deficit that was largely caused by the operation of the school; (3) the loss of parishioners to other congregations; and (4) Black's divorce.

Black's termination occurred in the midst of a one-year employment contract. The contract included termination provisions, an opportunity for a hearing before the parish board of education, and a right of review by the diocesan board. The contract specifically authorized dismissal whenever "such dismissal shall be in the best interest of the school." The Bishop terminated Black without following the contractual termination procedure. Black then commenced this breach of contract action to recover the salary still owed on the one-year employment contract. He claims that the termination constitutes a

breach because the Bishop did not comply with the contractual termination provisions.

The first issue that we must decide is whether a material fact question exists concerning the reason for Black's termination and, if not, whether he was terminated for an ecclesiastical reason. Wisconsin courts lack jurisdiction to review the merits of a termination based on ecclesiastical reasons. *Olston v. Hallock*, 55 Wis. 2d 687, 698, 201 N.W.2d 35, 40 (1972). The determination of whether an ecclesiastical question exists must be made by the court. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972); *State v. Kasuboski*, 87 Wis. 2d 407, 417, 275 N.W.2d 101, 105 (Ct. App. 1978).

The trial court ruled that Black's termination was motivated by ecclesiastical reasons, rather than secular reasons. Black concedes that the Bishop articulated a sufficient ecclesiastical reason to justify termination. He argues on appeal, however, that the ecclesiastical reason was a pretext, and that secular reasons constituted the real reason for the termination. Black contends therefore that the question of whether ecclesiastical or secular reasons caused his termination is a disputed issue of material fact.

We conclude that the Bishop's motivation for terminating Black does not involve a disputed issue of material fact. The Bishop clearly stated in the termination letter that Black's dismissal was based upon the unhealthy discord existing in the parish. Consistent with this statement, he also dismissed the parish priest, and he would have dismissed the members of the parish board of education if they had not already been dismissed. The Bishop's affidavit also indicates that he dismissed Black because of the discord in the congregation.

Black misreads the Bishop's affidavit to suggest that the Bishop dismissed him because of declining school

enrollment, an increasing budget deficit caused by the school operation, and loss of parishioners to other congregations. He argues that these are exclusively secular reasons. The Bishop's affidavit clearly states, however, that he considered such factors, as well as the controversy surrounding Black's divorce, as showing an irreconcilable conflict in the congregation. In his own affidavit, Black does not dispute the Bishop's motivation, but he does dispute the accuracy of the Bishop's conclusion that he was a source of discord in the congregation. He also conceded at the summary judgment hearing that the Bishop acted to eliminate the discord within the congregation. Based on this record, the Bishop's reason for terminating Black is not a disputed issue of material fact.

The next issue we must determine is whether the Bishop's reason for terminating Black constituted an ecclesiastical reason. Because religious authority necessarily pervades a church operated school, personnel decisions affecting the school may involve ecclesiastical issues as much as decisions affecting other church employees. *See NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979). Decisions affecting church school employees are not necessarily secular therefore, but must be considered as we would consider other church personnel decisions.

We conclude that the Bishop terminated Black for an ecclesiastical reason. We disagree with Black that a termination made in order to eliminate discord within a congregation is an administrative decision that is purely secular. When a bishop acts to eliminate a serious disagreement within a congregation, he acts for the good of the church; such a decision is beyond the province of judicial review. *Olston*, 55 Wis. 2d at 698, 201 N.W.2d at 40. Matters of internal church government are at the core of ecclesiastical affairs and are not only adminis-

trative. *Servian Eastern Orthodox Diocese v. Milivoje-vich*, 426 U.S. 696, 721–22 (1976). We conclude therefore that it would infringe on ecclesiastical authority to deny the Bishop authority to dismiss the church school principal in order to end a schism in the congregation.

The final question that we must address is whether the congregation may be liable to Black despite the ecclesiastical reason for his termination. Black contends that requiring the congregation to pay his remaining salary does not infringe upon the ecclesiastical authority of the Bishop and that the requirement protects his contract rights. The *Olston* decision supports this argument by recognizing that when a church controversy involves rights growing out of a contract recognized by the civil law, courts cannot avoid adjudicating such rights. *Olston*, 55 Wis. 2d at 699, 201 N.W.2d at 41. In order for Black to recover his unpaid salary, however, the contract must require payment.

We conclude that this contract does not require the congregation to pay Black's remaining salary because he was undisputedly terminated for the good of the church and school. The contract specifically allows the congregation to terminate Black when termination is in the best interest of the school. Because the Bishop's reason for terminating Black is not a disputed issue of fact, and because the reason satisfies the contractual standard for termination, the congregation was entitled to summary judgment. Although the congregation did not terminate Black in accordance with the contract procedure, he incurred no damages as a matter of law because grounds undisputedly existed for his termination. Because damages are an essential element of a contract action, summary judgment dismissing Black's action was proper. *See Les Moise, Inc. v. Rossignol Ski Co.*, 116 Wis. 2d 268, 342 N.W.2d 444 (Ct. App. 1983).

*By the Court.*—Judgment affirmed. Costs denied to respondents.[2]

[2] Because the respondents cited a nonpublished opinion in its brief, we deny costs. *See* sec. 809.83(2), Stats.