288 N.J. Super. 233 (1996)
672 A.2d 217
KAREN SABATINO, PLAINTIFF-APPELLANT,
v.
SAINT ALOYSIUS PARISH, SAINT ALOYSIUS SCHOOL, AND ARCHDIOCESE OF NEWARK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1996.
Decided March 7, 1996.
*234 Before Judges PETRELLA and P.G. LEVY.
Marc S. Klein argued the cause for appellant (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys; Mr. Klein and Joseph D. Glazer, on the brief).
William A. Cambria argued the cause for respondents (Mr. Cambria and Eileen P. Mulroy, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Karen Sabatino appeals from a summary judgment entered in the Law Division dismissing her complaint against defendants St. Aloysius Parish, St. Aloysius School, and the Archdiocese of Newark. Ms. Sabatino was the principal of a parochial elementary school in the Archdiocese of Newark, where she served under a series of one-year contracts.
The relevant facts are summarized in Judge Fuentes' opinion. Sabatino v. St. Aloysius Parish, 280 N.J. Super. 185, 654 A.2d 1033 (Law Div. 1994). In a reorganization prompted by economic and pastoral considerations, the Archdiocese of Newark decided to close two schools and open a new school utilizing a building that formerly housed the school in which Sabatino had served as principal. A parish that formerly did not have its own school was assigned to co-sponsor the new school, along with the two parishes whose schools had been closed.
Although considered for the position, Sabatino was not hired as principal of the new school. Instead, the church authorities selected a nun, asserting, among various reasons, that her status was beneficial in carrying out the religious mission of the parochial *235 school. Sabatino felt aggrieved and brought suit, claiming breach of contract, gender discrimination, and related torts. Judge Fuentes dismissed Sabatino's complaint essentially on abstention grounds, ruling that the Free Exercise Clause of the First Amendment precluded a civil court from second-guessing a church's religiously motivated employment decision regarding a "ministerial" position. Alternatively, the judge concluded that there were no material issues of fact as to Sabatino's claim that she was entitled to the position because of an employment contract.
We affirm substantially for the reasons expressed by Judge Fuentes in his oral decision and in his reported decision. We add only the following comments.
The United States Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745, 756 (1971), recognized that religious instruction "is part of the total educational process" and that parochial schools are "an integral part of the religious mission of the Catholic Church.... In short, parochial schools involve substantial religious activity and purpose." Id. at 615-616, 91 S.Ct. at 2112-2113, 29 L.Ed.2d at 757; accord N.L.R.B. v. Catholic Bishop of Chicago, 440 U.S. 490, 501-502, 99 S.Ct. 1313, 1319-1320, 59 L.Ed.2d 533, 541-542 (1979) ("Religious authority necessarily pervades the [parochial] school system.").
Moreover, the role of the principal at the new school was "ministerial"[1] within the context of religious doctrine and polity. See Elmora Hebrew Ctr., Inc. v. Fishman, 215 N.J. Super. 589, 595-597, 522 A.2d 497 (App.Div. 1987) (noting that rabbi's functions *236 were "intimately tied to questions of religious doctrine").[2] The principal is in charge of students' religious education; she supervises the teachers, plays a significant role in curriculum development, is liaison between the school and the religious community, and is the guiding force behind the school's spiritual mission. Her functions are more than merely financial and logistic. Thus, we agree with Judge Fuentes that the principal of a parochial school does perform a "ministerial" function. Sabatino v. St. Aloysius Parish, supra, 280 N.J. Super. at 194, 654 A.2d 1033.
Judge Fuentes' decision is further supported by Black v. St. Bernadette Congregation of Appleton, 121 Wis.2d 560, 360 N.W.2d 550 (Ct.App. 1984). In Black, a parochial school principal was fired during the term of his one-year contract, although the church did not follow the procedure for termination set forth in the contract. The breach of contract action was dismissed on the ground that the plaintiff had been fired "for ecclesiastical reasons." Id., 360 N.W.2d at 552. The appellate court affirmed, noting that "Wisconsin courts lack jurisdiction to review the merits of a termination based on ecclesiastical reasons" and that it is a question of law to determine whether the reasons were indeed ecclesiastical. Ibid. The appellate court agreed that the affidavits before the trial court were sufficient to establish that the church's reasons were ecclesiastical, namely that plaintiff was causing discord within the congregation. Id. at 553. Further, the court rejected plaintiff's claim (similar to that advanced by Sabatino in the instant appeal) that the stated ecclesiastical reason was a pretext. Ibid.
Significantly, for purposes of determining whether the reason for termination was an ecclesiastical reason, the court in Black explained how a school administrator could be imbued with religious status:

*237 Because religious authority necessarily pervades a church operated school, personnel decisions affecting the school may involve ecclesiastical issues as much as decisions affecting other church employees. See NLRB v. Catholic Bishop, 440 U.S. 490, 502, 99 S.Ct. 1313, 1319, 59 L.Ed.2d 533 (1979). Decisions affecting church school employees are not necessarily secular therefore, but must be considered as we would consider other church personnel decisions.
[Black v. St. Bernadette Congregation, supra (360 N.W.2d at 553).]
The Black court continued: "Matters of internal church government are at the core of ecclesiastical affairs and are not only administrative." Id. (citing Serbian Eastern Orthodox Diocese v. Milivojevich, 426 U.S. 696, 721-722, 96 S.Ct. 2372, 2386-2387, 49 L.Ed.2d 151, 169-171 (1976)). Finally, Black held that when personnel action is conducted for "the good of the church," as perceived by the church itself, that action "is beyond the province of judicial review." Ibid. Accordingly, Judge Fuentes correctly determined that the position of a principal in a parochial school is a "ministerial" one and that selecting a nun to be the principal of the new school in this case was an ecclesiastical decision, thus necessitating judicial abstention.
Concluding that the First Amendment mandates judicial abstention, however, does not end the court's inquiry. The court's task then is to review the employment manual or contract to determine whether the parties expressly waived their right to withhold disputes from the courts. For example, parties may contract that employment disputes will be resolved by the courts. Welter v. Seton Hall University, 128 N.J. 279, 296, 608 A.2d 206 (1992); Alicea v. New Brunswick Theological Seminary, 128 N.J. 303, 315, 608 A.2d 218 (1992). There is nothing in either Sabatino's last employment contract or in the Co-Sponsorship Guidelines (which discusses the new school's policies and procedures) that speaks to the adjudication of disputes, let alone that consents to civil court jurisdiction. Moreover, Sabatino has not indicated that any such provision exists. Hence, Judge Fuentes correctly declined to inquire further and exercise jurisdiction.
In light of our determination, we need not reach the issues of breach of contract and claimed violations of the Conscientious *238 Employee Protection Act, N.J.S.A. 34:19-1 to -8, which the trial judge addressed in his opinion. Sabatino v. St. Aloysius Parish, supra, 280 N.J. Super. at 196-197, 654 A.2d 1033. Nor need we reach the issues of sex discrimination and wrongful discharge, which are not expressly referred to in Judge Fuentes' published decision. Nonetheless, we note the following.
Sabatino's reliance upon Gargano v. Diocese of Rockville Centre, 888 F. Supp. 1274 (E.D.N.Y. 1995), is inapposite. Gargano was a teacher at a parochial school that was among those closed during a diocesan reorganization of schools. A new school was created to serve the students of the closed schools. After Gargano unsuccessfully applied for a teaching position at the new school, she sued, alleging that the diocese had breached its contract with Gargano by violating the hiring procedures delineated in the teachers' handbook. The jury returned a verdict in Gargano's favor on the contract claim. The district court upheld the jury's finding that the diocese had breached the section of the teachers' handbook that described the "mechanism by which teachers would be selected for a position at [the new school and] provided for a thorough substantive evaluation of the teacher-applicant." Id. at 1284.
Although Sabatino cites Gargano for the propositions that the Co-Sponsorship Guidelines constituted an employment contract and that whether defendants breached the contract is a question of fact, Gargano is readily distinguishable from the present matter. In Gargano, the defendant did not object to the court's jurisdiction or otherwise raise any theory of judicial abstention in light of the First Amendment. Nor was there any suggestion that the hiring decision was grounded in religious considerations. Hence, the controversy in Gargano was resolved by applying neutral principles of contract law. See Welter v. Seton Hall University, supra, 128 N.J. at 297, 608 A.2d 206.
In a statement of reasons accompanying his order, Judge Fuentes observed that although the complaint was "pleaded in six counts, the complaint is essentially a breach of contract action." *239 He acknowledged Sabatino's claims of sex discrimination, slander, and forgery. After disposing of the breach of contract claims, the judge ruled as follows regarding the other causes of action:
Plaintiff's other contentions concerning financial improprieties and improper questions at her interview do not, even if true, present a jury question as to a contractual right to the position of principal at the [new school]. There is no such contractual right and no material issue of fact for [a] jury determination that would yield such a right.
Although the published opinion issued thereafter (see R. 2:5-1(b)) did not mention the non-contract claims, we essentially read the judge's ruling and reasoning as being that all of plaintiff's claims should be analyzed under the contractual-entitlement rubric. Sabatino argues that this deprived her of her tort causes of action, for which she claims to have established a prima facie case at least sufficient to go to a jury.
In assessing claims brought under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, our courts have adopted the analysis used by federal courts in resolving claims under Title VII of the Civil Rights Act of 1964. Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 600-601, 626 A.2d 445 (1993). It is well settled in the federal courts that the Free Exercise Clause demands that courts abstain from deciding "ministerial" church employees' claims of discrimination. Maguire v. Marquette University, 627 F. Supp. 1499 (E.D.Wis. 1986), aff'd in part and vacated in part on other grounds, 814 F.2d 1213 (7th Cir.1987). See also Rayburn v. General Conference of Seventh-day Adventists, 772 F.2d 1164, 1169 (4th Cir.1985), cert. denied, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986) (upholding denial of position of pastoral care associate and barring discrimination suit under Free Exercise Clause); Assemany v. Archdiocese of Detroit, 173 Mich. App. 752, 434 N.W.2d 233, 237-238 (1988) (commenting on Rayburn). As previously stated, a principal in a parochial school is a "ministerial" position. When individuals are selected to or removed from such a position, courts do not look behind the religiously motivated decision in search of a pretext. Rayburn v. General Conference of Seventh-day Adventists, supra, 772 F.2d at *240 1169; EEOC v. Mississippi College, 626 F.2d 477, 485, 489 (5th Cir.1980), cert. denied, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981). Thus, Sabatino's claim that defendants' selection of a nun as principal was pretextual is not cognizable.
Finally, plaintiff's claim under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980), is not supported by the record. Sabatino concedes that Pierce involved an employee alleging wrongful discharge and that the circumstances in this matter do not give rise to such a claim. Plaintiff in this case clearly was not discharged. Her position was eliminated when her school was closed. There is no dispute as to the legitimacy of the reorganization of the schools. Sabatino's challenge is to the defendants' failure to hire her for the new position. Such a challenge does not state a cause of action under Pierce. Moreover, Pierce has not been applied to failure to hire or promote situations.
Affirmed.
NOTES
[1] Although the term "ministerial" generally is used in the law to mean "under the authority of a superior ... that which involves obedience to instructions, but demands no special discretion, judgment, or skill[,]" Black's Law Dictionary 996 (6th ed. 1990), the term is used here to mean "of, being, or having the characteristics of a minister of religion...." Webster's Third New International Dictionary, Unabridged 1439 (1971). See also Welter v. Seton Hall University, 128 N.J. 279, 294-295, 608 A.2d 206 (1992) (acknowledging "ministerial-function" test and explaining that employee's duties are ministerial when they "consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship").
[2] Elmora was decided on an interlocutory appeal. Opinions regarding the final decision in the case are reported in Elmora Hebrew Ctr., Inc. v. Fishman, 239 N.J. Super. 229, 570 A.2d 1297 (App.Div. 1990), aff'd, 125 N.J. 404, 593 A.2d 725 (1991).