FRANK SPIEGEL, PLAINTIFF-RESPONDENT, v. EVER-
GREEN CEMETERY COMPANY, DEFENDANT-APPEL-
LANT.

WILLIAM SPIEGEL, PLAINTIFF-RESPONDENT, v. EVER-
GREEN CEMETERY COMPANY, DEFENDANT-APPEL-
LANT.

Submitted January 31, 1936—Decided August 6, 1936.

Before Justices HEHER and PERSKIE.

For the appellant, *J. Edward Fagen* (*George H. Jacobs*, of counsel).

For the respondents, *Isadore Berman* (*Albert B. Melnik*, of counsel).

The opinion of the court was delivered by

HEHER, J.  These actions sound in tort.  Each state of demand pleads three asserted causes of action; and their *gravamina* are the willful and wanton breaches of what seem to be conceded duties, assumed at plaintiffs' instance, first, to inter the remains of their deceased father in a lot in its cemetery reserved for the purpose "in a proper and decent manner," and, second, to conduct the burial in plaintiffs' presence.

The jury empanelled to try the common issues (the causes were tried together) returned verdicts for the plaintiffs; and from the consequent judgments, defendant appeals.

It is assigned for error, first, that the District Court judge denied defendant's motions to strike out the complaints and to nonsuit on the ground that the law does not permit of a recovery "for mental pain and suffering, unaccompanied by malice or actual damage;" and second, he instructed the jury that, in the appraisement of the injury, mental anguish was to be considered as a compensable element.

We find these to be the salient facts and circumstances: The grave prepared for the reception of the body was, in the attempted discharge of the duty resting upon defendant, dug in the wrong plot.  The error was discovered by a member

of the bereaved family when the funeral cortege arrived at the cemetery; and defendant's superintendent then undertook to dig and prepare presently a grave in the proper lot, and to hold the remains and arrange with the family for the interment later in the day in their presence. There was evidence tending to show an explicit understanding—a positive undertaking by the defendant—that the committal to the earth should take place only in the presence of the family. When the family, including the plaintiffs, responding to the call of the undertaker, journeyed to the cemetery later in the day, they found that the burial had taken place and the grave filled. Their request to defendant's superintendent for an immediate opening of the grave was denied. This was on May 14th, 1935. At the constant insistence of plaintiffs, the grave was opened by defendant on September 13th, 1935, to permit of the identification of the body, but, for lack of a permit, the casket was not opened. It was immediately recommitted, and the grave closed. On September 17th, the casket was again brought to the surface and opened. It was found to contain the body of the deceased; and there was immediate reinterment.

The initial inquiry is whether there was evidence tending to show the infringement of a right. We resolve this in the affirmative. It was indubitably the plaintiffs' right, at the common law as well as in virtue of the obligation thus undertaken by the defendant company, to witness the interment. This is of the very essence and substance of a common law right growing out of the domestic relation. The family tie binds us to the place of final repose of all that is earthly of our departed kin; and, therefore, it was plaintiffs' civil right, one bestowed and shielded by the law, to have knowledge, altogether certain and specific, of the location of the last resting place, as well as the solace of the final leave taking. The early English common law sheds little light on the subject. During its formative period, the ecclesiastical courts had jurisdiction of the dead; and, in consonance with the doctrines of that jurisdiction, the common law early rejected the concept of property in the corpse and the ashes, and

treated them as subjects largely of church superintendency. But the assumption of exclusive jurisdiction by the temporal courts brought radical changes of theory; and it is now the prevailing rule, in England as well as in this country, that the right to bury the dead and preserve the remains is a *quasi* right in property, the infringement of which may be redressed by an action in damages. The dead body is no longer *res nullius*. *Finley* v. *Atlantic Transport Co.,* 220 *N. Y.* 249; 115 *N. E.* 715; *Larson* v. *Chase,* 47 *Minn.* 307; 50 *N. W. Rep.* 238; 14 *L. R. A.* 85; *Pettigrew* v. *Pettigrew,* 207 *Pa.* 313; 56 *Atl. Rep.* 878; *Nichols* v. *Central Vermont Railroad Co.,* 94 *Vt.* 14; 109 *Atl. Rep.* 905; 12 *A. L. R.* 333; *Wynkoop* v. *Wynkoop,* 42 *Pa. St.* 293; *Bogert* v. *City of Indianapolis,* 13 *Ind.* 134; *Queen* v. *Stewart,* 12 *Ad. & E.* 776; 113 *Eng. Reprint* 1007; *In re Betteson,* 4 *Ad. & E.* 294; 12 *Moak* 656; *Cooley Torts (4th ed.),* § 178; 8 *R. C. L.* 684, et seq. And the right here asserted is implicit in this doctrine. Plaintiffs' reactions to the act complained of—altogether natural as they were—point to and emphasize the considerations underlying this right and illustrate the consequences of its invasion.

It remains to consider whether mental anguish consequent upon the invasion of the right is compensable. It is the general rule that damages for mental suffering or distress ensuing from mere negligence, and not occasioned or accompanied by physical injury, are not recoverable. *Ward* v. *West Jersey and Seashore Railroad Co.,* 65 *N. J. L.* 383; *Consolidated Traction Co.* v. *Lambertson,* 60 *Id.* 457. While the fundamental legal concept of a tort is a wrong with resulting damage, the damage requisite to make the injury actionable is frequently implied or presumed. There is a class of cases in which the policy of the law is to visit damages upon the wrongdoer as a restraint against the perpetration of the wrong. *Cooley Torts (4th ed.),* § 46. For instance, a trespass was generally actionable at common law without proof of a specific pecuniary injury. In many instances, a presumption of damage arose from the invasion of the relative or property rights of individuals in order to afford the protection that the law deemed requisite for the safeguarding

and preservation of such rights. As was said by Lord Denman in *Clifton* v. *Hooper,* 6 *Q. B.* 468, "when the clear right of a party is invaded in consequence of another's breach of duty, he must be entitled to an action against that party for some amount." The like principle was applied in *Hobson* v. *Todd,* 4 *T. R.* 71, 73. See, also, *Ashby* v. *White,* 25 *Eng. Rul. Cas.* 52; *Holt's Reports,* 1 *R. C.* 523. A trespass upon property, whether real or personal, is actionable, although the damage to the owner is inappreciable. The maxim *de minimus non curat lex* "is never applied to the positive and wrongful invasion of another's property." *Wartman* v. *Swindell,* 54 *N. J. L.* 589.

And at common law, cases of willful wrong, where mental anguish was the ordinary, natural and proximate consequence of the injury, especially those affecting the liberty, character, reputation, personal security or domestic relations of the injured party, were classified as valid exceptions to the general rule that mental or emotional distress, unaccompanied by physical injury, was not the subject of legal redress. *Lombard* v. *Lennox,* 155 *Mass.* 70; 28 *N. E. Rep.* 1125; *Boyle* v. *Chandler,* 33 *Del.* 323; 138 *Atl. Rep.* 273; *Nichols* v. *Central Vermont Railroad Co., supra; Finley* v. *Atlantic Transport Co., supra; Wright* v. *Hollywood Cemetery Corp.,* 112 *Ga.* 884; 38 *S. E. Rep.* 94; 52 *L. R. A.* 621; *Larson* v. *Chase, supra; Koerber* v. *Patek,* 123 *Wis.* 453, 462; 102 *N. W. Rep.* 40; 68 *L. R. A.* 956; *Renihan* v. *Wright,* 125 *Ind.* 536; 25 *N. E. Rep.* 822; *Southern Express Co.* v. *Byers,* 240 *U. S.* 612; 36 *S. Ct.* 410; 60 *L. Ed.* 825; 8 *R. C. L.* 698, et seq.; *Southerland on Damages (4th ed.),* § 24; 17 *C. J.* 828, 831.

Under the common law, mental or emotional distress was a proper element for consideration in the admeasurement of damages in but two classes of cases, generally speaking, viz.: First, where negligence was the proximate cause of a physical injury, and the mental anguish was the proximate result of the physical hurt, not of the negligent act; and second, where "the wrongful act was affirmative; was one of commission, not merely of omission; was the product of intent or

malice, express or implied; the wrongful act was the proximate cause of the legal hurt (a hurt that the law recognizes), for which damages were recoverable irrespective of mental anguish; and the damages allowable for mental anguish were not merely compensation for the mental condition produced by the legal hurt, but were also punishment for the willful wrong." *Western Union Telegraph Co.* v. *Ferguson,* 157 *Ind.* 64; 60 *N. E. Rep.* 674. The fundamental distinction between a willful wrong and pure negligence, in respect of the compensability of emotional distress, is there stated thus: "One who unintentionally fails to perform a duty should pay compensatory damages only. One who maliciously infringes another's legal rights should pay both compensatory and punitive damages. To apply the rules relating to punitive damages for willful wrongs to a case of unintentional default is certainly not a mere extension of the application of the rules of common law to new conditions. These classes of cases in which mental anguish is cognizable as an incident to causes of action complete without it at least negatively indicate the common law rule that mental anguish, as the proximate and sole result of a negligent act, does not constitute a cause of action."

Thus it is the rule, well-grounded in principle, that in the case of a willful wrong damages for mental suffering may be punitively assessed to protect the right against such invasion. One may not with impunity willfully trench upon a plain right conferred by the law. The legal protection of the interest ordains a penalty.

It is to be remarked, in passing, that the common law did not permit damages for mental distress consequent upon a mere breach of contract. This doctrine, too, is subject to exceptions; and it may well be that, on principle, it is inapplicable where the subject-matter of the contract is such as to make it certain or reasonably probable that the parties had in contemplation, at the time of the making of the contract, a pecuniary satisfaction for the anguish and distress of mind ensuing from a breach of its terms. But this case does not present that question, and we need not consider it.

Now, this was the explanation of his conduct given by defendant's superintendent: "I told Mr. Rowlett [the funeral director] about five o'clock he could come back and the grave would be ready, which it was. We kept that grave open for a half hour; nobody came out. *Q.* Was that a half hour after five o'clock? *A.* Yes, sir. Then I had four men waiting there, their time was up and they wanted to get home, and I says, 'go ahead, boys, fill it in.' We had no sooner got the grave filled in than down came Mr. Rowlett with the family * * *."

And so, it was open to the jury to find that the defendant company, if chargeable with mere negligence in opening the grave in the wrong lot, was, in its subsequent conduct, guilty of a callous and wanton assault upon the sensibilities and feelings of the bereaved plaintiffs. One utterly indifferent to the natural and probable consequences of such conduct will not be heard to say that he did not intend them. A reckless disregard by the wrongdoer of the legal rights of the victim is properly classable as an intentional infringement—a willful wrong; and where, as here, a grievous injury to the feelings is reasonably certain to follow, that injury is presumed to have been intended, and the consequent mental suffering is compensable. At all events, it warrants the imposition of exemplary damages. Compare *Finley* v. *Atlantic Transport Co., supra; Lombard* v. *Lennox, supra; Larson* v. *Chase, supra.* Actual malice need not be affirmatively shown if the act complained of was wantonly or recklessly done. *Louis Kamm, Inc.,* v. *Flink,* 113 *N. J. L.* 582, 588; *Farwell* v. *Warren,* 51 *Ill.* 467; *Dibble* v. *Morris,* 26 *Conn.* 416. This was a wrongful invasion of plaintiffs' relative rights, springing from the civil and domestic relations. It was a "legally protected interest" of the plaintiffs, the tortious invasion of which is actionable and makes the actor liable for mental or emotional distress. See *Torts, A. L. I.,* §§ 47 (b) and (c).

It is a corollary of this principle that we are not here concerned with the elements or *quantum* of the damages which may lawfully be awarded for an infringement of this right. It is the established rule in this state that wherever there is

a breach of contract, or the invasion of a legal right, the law ordinarily infers that damage has ensued. And, in the absence of actual loss, the law vindicates the right by awarding nominal damages. The injury imports damage. *New Jersey School and Church Furniture Co.* v. *Board of Education,* 58 *N. J. L.* 646; *Golden* v. *Knapp,* 41 *Id.* 215; *Lance* v. *Apgar,* 60 *Id.* 447; *Van Schoick* v. *Van Schoick,* 76 *Id.* 242; *Klein* v. *Shryer,* 106 *Id.* 432. See, also, *Larson* v. *Chase, supra; Finley* v. *Atlantic Transport Co., supra.*

Nor are we required to consider the assignment of error relating to the instruction treating of the elements of the recoverable damage. A general exception only was taken to the charge. The claimed error was not specified; and the exception is therefore unavailing.

The question of the liability of the corporate administrator of a charitable use for the willful wrong of its servant in the discharge of duties assigned to him is not raised, and therefore need not be regarded. See *Atlas Fence Co.* v. *West Ridgelawn Cemetery,* 110 *N. J. Eq.* 580; *Simmons* v. *Wiley Methodist Episcopal Church,* 112 *N. J. L.* 129; 11 *C. J.* 374; 5 *R. C. L.* 374.

Judgments affirmed, with costs.