899 A.2d 316 (2006)
386 N.J. Super. 100
MENORAH CHAPELS AT MILLBURN, (A New Jersey Corporation), Plaintiff-Respondent,
v.
Emanuel NEEDLE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2005.
Decided June 8, 2006.
*318 Daniel B. Needle argued the cause for appellant (Kohn, Needle & Silverman, attorneys; Mr. Needle on the brief).
Michael R. Magaril, Westfield, argued the cause for respondent.
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this appeal, we consider the nature of damages that can be recovered as the result of the failure by a funeral home that caters to members of the Jewish faith to ensure that orthodox ritual requirements are met when the rituals have been requested by a member of the deceased's family.
On the Friday that his father-in-law died, defendant Emanuel Needle arranged with plaintiff Menorah Chapels of Millburn, promoted as a "Jewish Funeral Chapel," to provide funeral and related services. Because of the Sabbath, commencing at sundown on Friday, the funeral could not be conducted until Sunday, February 21, 1999.
Decedent was an orthodox Jew. Menorah Chapels does not contest that it is customary in the orthodox Jewish faith that watchers or shomerim conduct a continuous vigil or shmeerah[1] over the body *319 of the deceased until the time of the funeral. A General Price List for Menorah Chapels, effective June 1, 1998, provided:
The special Orthodox ritual requirements of Tahara [ritual washing] and Watcher [shomer] will be carried out whether decedent is a man or woman by qualified persons in a religiously satisfactory manner upon request, and can be verified if desired. The Tahara will be provided along with a muslin shroud at no additional cost.
A "Shomer Shabbos" [Sabbath] watcher is also available for a small additional charge if requested.
A "Removal, Embalming and Preparation Release Form" pertaining to the deceased and dated February 19, 1999 specified "shrouds & shmeerah." Additionally, the "Statement of Goods and Services Selected" that was executed by Needle on Sunday February 21, 1999 discloses that he requested, and Menorah Chapel agreed to provide, shomerim to conduct the shmeerah. The Statement discloses that six shifts would be necessary to properly conduct the shmeerah, at a cost of $900.
Menorah Chapel subcontracted the provision of shomerim to a burial society. However, allegedly because of the Sabbath, the society did not provide the requested services, and in fact only three of the six shifts of shomerim appeared, commencing on Saturday evening after the Sabbath had ended. Neither Needle nor any of his family members was informed of the failure to provide the full contracted-for services until shortly before the funeral service was to commence and after the body had been left alone in a fashion contrary to orthodox Jewish custom and belief.
In October 1999, the Chapel brought a collection action against Needle in the Special Civil Part, demanding the full cost of its funeral services, subject to a $390 discount as the result of the absence of three shifts of shomerim. Needle entered a general denial of the allegations of the complaint and filed a counterclaim in which he alleged that the failure to provide the required shomerim constituted negligence and breach of warranty resulting in emotional distress to the family. Although breach of contract was not specifically alleged, it can be fairly inferred from Needle's breach of warranty claim and from the general denials contained in defendant's answer. The action was dismissed without prejudice. However, a new complaint was filed more than two years after the funeral on April 9, 2002. A counterclaim identical to the first was again filed by Needle.
The matter came to trial on October 16, 2002. Needle, who was not prepared to proceed, sought an adjournment, which was granted on the condition that he pay the attorney's fees and costs incurred by Menorah Chapel in preparing for trial. The amount of $4,877.02 was assessed as a result.
Thereafter, in cross-motions, Needle sought dismissal of the complaint and referral of the dispute to a religious court, and Menorah Chapel sought summary judgment on the counterclaim. Following argument, Needle's motion was denied, and the motion by Menorah Chapel to dismiss Needle's counterclaim was granted.
In denying Needle's motion, the judge found that Menorah Chapel's complaint did not involve a matter of religious doctrine or practice, but instead, "a contractual undertaking for professional services between two parties, neither of whom are members of the clergy nor religious institutions." He framed the issue as whether Menorah Chapel had breached what he characterized as a "divisible contract" by not providing the requested services, *320 and he determined that damages could easily be calculated by determining "the difference between what was promised, and what was received." The judge continued:
The parties are seeking monetary damages, and the determination of the issue and the impact of any damages do[es] not involve the Court in an "excessive entanglement" between Church and State, such as "protected government," surveillance of church activities, nor does it even involve potential church fiscal disbursements. The Church is not a party to this litigation nor members of its clergy. The Court is not prohibited, but has a duty and obligation to enforce secular contract rights, despite the fact that the parties may base their claims on religious affiliations, or that their defenses may have religious overtones, or may arise out of conduct that offends religious tenets.
The motion judge premised his dismissal of the counterclaim in part upon Needle's alleged failure to provide responses to interrogatories by a court-ordered date. The court further explained its decision to dismiss the counterclaim as follows:
Additionally, the decision to dismiss is Granted for essentially the reasons stated in plaintiff's opposition; none of plaintiff's claims can withstand close scrutiny; Statute of Limitations would apply if defendant is proceeding under theory of emotional distress; and defendant does not plead with any particularity his allegations regarding fraud and/or misrepresentations. See N.J.S.A. 2A:14-2 (Two Year Limitation) and R. 4:5-8.
After additional proceedings, including withdrawal of claims for any reimbursement of the cost of services partially performed by the shomerim, summary judgment was entered in favor of Menorah Chapel on its complaint, and Needle was ordered to pay additional attorney's fees of $11,627.02 and costs of $1,641.35 in accordance with a contractual provision requiring payment of "all reasonable costs of collection including court costs and attorney's fees."
Needle appeals from the order of summary judgment on the complaint and dismissal of the counterclaim, and additionally appeals from the award of counsel fees against him.

I.
We concur with the conclusion of the motion judge that our consideration of this matter is not barred by the Free Exercise or Establishment Clauses of the First Amendment.
The impact of the First Amendment on judicial power in a religious context has most recently been addressed by the Supreme Court in Alicea v. New Brunswick Theological Seminary, 128 N.J. 303, 608 A.2d 218 (1992) (affirming determination to abstain from decision in a suit for denial of tenure because position required exercise of "ministerial" functions); Welter v. Seton Hall Univ., 128 N.J. 279, 608 A.2d 206 (1992) (permitting civil adjudication of suit by nuns against Catholic university because the nuns' breach of contract action did not arise out of their performance of ministerial duties and they did not contemplate that religious canons would govern their suit) and Elmora Hebrew Ctr. v. Fishman, 125 N.J. 404, 593 A.2d 725 (1991) (finding courts can enforce secular contract rights, but holding synagogue had consented to submission of its dispute against its rabbi to a rabbinical court); Sabatino v. St. Aloysius Parish, 280 N.J.Super. 185, 654 A.2d 1033 (Law Div. 1994), aff'd 288 N.J.Super. 233, 672 A.2d 217 (App.Div.1996) (abstaining in dispute between school principal and parish over *321 termination of employment following parochial school consolidation); see also McKelvey v. Pierce, 173 N.J. 26, 800 A.2d 840 (2002) (remanding for a determination whether former seminarian's breach of contract claims against diocese and priests could be litigated without offending First Amendment's Establishment and Free Exercise Clauses); Ran-Dav's County Kosher v. State, 129 N.J. 141, 162-63, 608 A.2d 1353 (1992) (holding kosher regulations unconstitutional under Establishment Clause and observing that disputes regarding their interpretation would inevitably entail application of Jewish law), cert. denied sub nom. Nat'l Jewish Comm'n on Law & Public Affairs v. Ran-Dav's County Kosher, Inc., 507 U.S. 952, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993).
Both the Free Exercise and Establishment Clauses have been construed to bar civil courts from deciding issues of religious doctrine or ecclesiastical governance. Ran-Dav's, supra, 129 N.J. at 162, 608 A.2d 1353; Elmora, supra, 125 N.J. at 413-16, 593 A.2d 725; Alicea, supra, 128 N.J. at 311, 608 A.2d 218. Additionally, civil courts cannot interfere with church administration in a manner that impedes the promulgation of church doctrine or interferes in the way that the church wishes its doctrine to be expressed, for in either case, the court's action could be construed as a back-door doctrinal determination or other interference with the free exercise of religion. Ibid.
In contrast, courts may, where appropriate, apply neutral principles of law to determine disputed questions that do not implicate religious doctrine or ministerial functions or result in regulatory entanglement in church matters. Id. at 313, 608 A.2d 218; Ran-Dav's, supra, 129 N.J. at 162, 608 A.2d 1353; Elmora, supra, at 414, 593 A.2d 725. "`Neutral principles' are wholly secular legal rules whose application to religious parties or disputes does not entail theological or doctrinal evaluations." Id. at 414-15, 593 A.2d 725. "Specifically, courts should enforce express agreements or implied promises to comply with religious doctrine when they can determine compliance or non-compliance with such agreements by application of neutral principles of law." Alicea, supra, 128 N.J. at 313, 608 A.2d 218. Further, a matter that would otherwise require abstention as the result of the application of these principles can be heard by a civil court if the parties have agreed to resolution of their dispute in that forum. Id. at 314, 608 A.2d 218; Welter, supra, 128 N.J. at 296, 608 A.2d 206; Sabatino, supra, 288 N.J.Super. at 237, 672 A.2d 217.
The contract for funeral services executed in this case provided that: "All disputes involving this agreement shall be resolved in accordance with New Jersey law and may be heard in the Superior Court, Law Division . . . ." Consent to resolution of this matter by a civil court thus exists. Moreover, as the motion judge recognized, this case is in essence a contractual dispute between secular parties regarding the provision of services. Although the services at issue may be required under the tenets of the orthodox Jewish faith, the dispute does not concern the manner in which they were performed, but solely whether they were performed at alla non-doctrinal matter. We note additionally that in his counterclaim Needle does not allege damage to the deceased as the result of the absence of the shomerim, but only emotional distress to surviving family members, a form of consequential damages that is customarily available in civil proceedings. See, e.g., Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 93-97, 186 A. 585 (Sup.Ct.1936) (recognizing the compensability of mental anguish suffered in connection with the burial of the *322 deceased without the presence of his bereaved family); see also Tarr v. Ciasulli, 181 N.J. 70, 77, 853 A.2d 921 (2004) (acknowledging the long recognition of damages for emotional distress as a component of various intentional tort and breach of contract claims). We thus reject any argument that the court should have abstained from consideration either of the complaint itself or the counterclaim.

II.
The motion judge found the contract underlying this dispute to have been divisible in nature, and as a result permitted recovery by Menorah Chapel for the goods and services provided, subtracting only the cost of the shomerim. Needle argues that this determination was erroneous. We agree.
A party may not repudiate one part of a nondivisible contract and claim the benefit of the residue, because to do so "would amount to unjust enrichment and would bind the parties `to a contract which they did not contemplate.'" County of Morris v. Fauver, 153 N.J. 80, 97, 707 A.2d 958 (1998) (quoting 17A Am.Jur.2d, Contracts § 548 (2d ed.1991)). "Only where a contract is severable into different transactions may one of those separate transactions be avoided." Ibid.
"A contract is said to be entire when the consideration moving from the promissor is conditioned upon the complete performance by the promissee of his promise. On the other hand, a contract is said to be divisible when performance is divided in two or more parts with a definite apportionment of the total consideration to each part." Integrity Flooring, Inc. v. Zandon Corp., Inc., 130 N.J.L. 244, 247, 32 A.2d 507 (Sup.1943). A determination whether a contract is divisible or entire depends upon the intent of the parties as gathered from the agreement itself and the surrounding circumstances. Ibid. The Supreme Court has framed the determination of the parties' intent in the following terms:
Would the agreement have been made were the parties not under the impression that it would be performed in its entirety? We recognize that the intentions of the parties may not be easily gleaned. Hence, we also encourage the. . . court to determine whether it is fair to the parties to deem the agreement severable.
[Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 613, 560 A.2d 655 (1989).]
Menorah Chapel argues that its contract with Needle was severable because its services were independently priced (as required by N.J.A.C. § 13:36-9.8(a)) in the Statement of Funeral Goods and Services Selected that was executed by Needle. However, as N.J.A.C. § 13:36-9.3(a) makes clear by declaring that the failure to disclose such information constitutes an unfair or deceptive practice, the itemization supplied by Menorah Chapel is a consumer protection device. The Board of Mortuary Science stated when these regulations, entitled "Prevention of Unfair or Deceptive Acts and Practices," were proposed:
Consumers will be benefitted by the proposed regulations in that decisions about purchases of funeral goods and services will be made only after complete disclosure of price information about all of the options available to them.
* * *
Both F.T.C. rules and the present Board rules require that consumers also be given a fully itemized list of prices for all goods and services chosen when arrangements for a funeral are made. . . . The New Jersey consumer may thus be *323 provided with a written statement of the full costs of the arrangements desired before entering into any contract with the funeral director.
[16 N.J.R. 1315(a) (June 4, 1984).]
See also 16 N.J.R. 3210 (November 19, 1984) (noting the Board of Mortuary Science's power to police licensees for unfair and deceptive acts and practices).
The itemization thus cannot be reasonably construed as dispositive evidence of a severable contract. "The mere fact that there is a contract rate of payment per unit of performance to be rendered by the plaintiff, is not sufficient to make the contract divisible." 12 Corbin on Contracts § 1111 at 41 (1964). As Corbin points out, when viewed in context, neither party may have been willing to accept part performance at the rate specified in lieu of performance of the entire contract. Id. at 42. This principle is discussed in the Restatement (Second) of Contracts § 240, which provides for an analysis of a contract to determine whether it can be divided into corresponding pairs of part performance by one contracting party and payment by the other. Even when such apportionment is possible, however, the Restatement requires that a court look to the parties' intent to determine whether the value to the injured party of what he received is equivalent to its stated price or whether that value is materially diminished by the part performance.[2]Id. cmt. e.
We find no evidential support for the motion judge's conclusion in the context of the provision of funeral services in this case that the undertaking by Menorah Chapel to provide enumerated goods and services was severable, so that, for instance, its failure to transfer the remains of the decedent to the funeral home, to embalm if requested, to supply the coffin ordered by the family of the decedent, or to render any other goods or services material to the undertaking could be cured by a simple deduction of the price of that service from the total contract amount. Such an intent clearly was not manifested by the parties at the time that the contract for services was executed, and cannot reasonably be inferred in the circumstances presented.
We leave to a jury to determine whether the full provision of shomerim constituted a material condition of the contract.
If a jury finds that Menorah Chapel committed a material breach of its contract with Needle, the Chapel may nonetheless be entitled to recovery of the value of its remaining services on a quantum meruit basis. Shea v. Willard, 85 N.J.Super. 446, 451, 205 A.2d 74 (App.Div.1964); see also E. Allan Farnsworth, Contracts § 8.14 at 575 (3d Ed.1999) ("a party that is precluded from recovering on the contract because of not having substantially performed can at least recover for any benefit conferred, less damages for which that party is liable because of breach."). However, its damages cannot be measured solely by reference to the unit price of the goods and services actually provided. "Fairness requires that a party, having received only a fraction of the performance that he expected under a contract, not be asked to pay an identical fraction of the price that he originally promised on the expectation of full performance, unless it appears that the performance that he actually received is worth to him roughly that same fraction of what full performance would have been worth to him." Restatement (Second) of Contracts, § 240 cmt. e.

*324 III.
Needle also appeals the order dismissing his counterclaim with prejudice as the result of failure to serve discovery, to state a legally cognizable claim, to plead fraud with specificity, and insofar as his counterclaim sounded in tort, to have commenced the action within the applicable two-year statute of limitations. N.J.S.A. 2A:14-2. We reverse the dismissal of Needle's counterclaim for breach of contract.
The record does not permit us to determine whether the motion judge would have dismissed Needle's counterclaim with prejudice if his alleged failure to respond to discovery requests constituted his sole failing. Nor are we able to determine with any specificity what discovery was requested, whether such discovery feasibly could have been produced, its relevance to these proceedings, or the anticipated prejudice to Menorah Chapel as the result of the nonproduction of the requested information. See Casinelli v. Manglapus, 181 N.J. 354, 365, 858 A.2d 1113 (2004) (discussing factors relevant to imposition of sanctions for failure to make discovery); Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 157-58, 836 A.2d 779 (2003); R. 4:37-2(a). However, we note the salutary principle that an action should not be dismissed with prejudice if some lesser sanction would have sufficed. Abtrax Pharms. v. Elkins-Sinn, Inc., 139 N.J. 499, 514-16, 655 A.2d 1368 (1995).
What we can say, however, is that neither the record nor counsel's arguments on appeal support the draconian sanction that was imposed, if in fact the motion judge intended the sanction to apply solely as the result of a discovery violation. In particular, we have been offered nothing to suggest compliance by Menorah Chapel with the procedures of R. 4:23-5 and R. 6:4-6 in seeking sanctions against Needle. Moreover, it is unclear to us that the discovery requests that the Chapel sought to enforce were in fact timely served within the period for discovery. In the interest of justice, we therefore vacate the dismissal of Needle's counterclaim with prejudice insofar as that dismissal may have been based upon an alleged discovery violation.
We find, however, that those portions of Needle's counterclaim asserting causes of action premised upon negligence, misrepresentation and fraud were properly dismissed. None was timely, even if we deem the applicable period of limitations to have been tolled during the pendency of Menorah Chapel's initial action. N.J.S.A. 2A:14-2. Needle does not contend otherwise and focuses his arguments upon his contractual claim.
We conclude that the motion judge erred in finding that Needle's counterclaim failed to set forth a cause of action for breach of contract resulting in consequential emotional distress. We note that the Supreme Court has recognized the principle that damages for emotional distress may be recovered in certain actions for breach of contract, Tarr, supra, 181 N.J. at 77-78, 853 A.2d 921, and in this regard has cited Spiegel, supra, wherein the court observed that damages for mental suffering may be available upon breach of contract "where the subject-matter of the contract is such as to make it certain or reasonably probable that the parties had in contemplation, at the time of the making of the contract, a pecuniary satisfaction for the anguish and distress of mind ensuing from a breach of its terms." 117 N.J.L. at 95, 186 A. 585. See also Muniz v. United Hosps. Med. Ctr. Presbyterian Hosp., 153 N.J.Super. 79, 82, 379 A.2d 57 (App.Div.1977) (In an action premised on the manner in which parents were informed of their child's *325 death, we observed that, after amendment and discovery, a claim for relief for emotional distress conceivably might be based upon violation of an implied contract with the hospital).
The recognition of consequential damages in any breach of contract action requires, as Spiegel suggests, the foreseeability at the time the contract was made that such damage will arise from the breach of contract. John D. Calamari and Joseph M. Perillo, Contracts at 569 (5th ed.2003). Although such damages are not commonly awarded, particularly when they consist of damages for emotional distress, existing New Jersey precedent suggests that because the provision of funeral services is specifically designed to bring comfort and solace to the bereaved, breach of a contract to provide such services can, if facts permit, support a claim for consequential damages that includes emotional distress. As then-Judge Richard Hughes has noted:
In the public relationship of the funeral director to the family and friends of the decedent there are intimate overtones calling for great skill, diplomacy, sobriety and sensitivity. Among other things, the practitioner arranges for religious services which are incident to most funerals. In his conducting of the public aspects of the funeral, he is looked to for a leadership upon which depend the dignity and propriety of an occasion which, coping with the tragedy and grief of bereavement, is of singular significance to those involved.
[Trinka Serv's v. State Bd. of Mortuary Sci. of N.J., 40 N.J.Super. 238, 242, 122 A.2d 668 (Law Div.1956).]
We find no merit in Menorah Chapel's argument that it cannot be held liable for the failure by the shomerim to perform the requested services. The documents constituting the contract in this matter clearly evidence an undertaking by Menorah Chapel to perform or contract with a burial society for the services, and refute the Chapel's argument that its obligation was limited to the disbursement of cash.
We further reject the argument that the damages suffered in this case were insufficient as a matter of law to warrant an award. The Court has distinguished a cause of action in tort or contract seeking consequential damages for emotional distress from a cause of action alleging intentional infliction of emotional distress, holding that only the latter requires a heightened showing of emotional distress. Id. at 77, 853 A.2d 921; see also Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 544 A.2d 857 (1988) (requiring for the conduct to be actionable that "the emotional distress ... be `so severe that no reasonable [person] could be expected to endure it.'") Id. at 366-67, 544 A.2d 857 (quoting Restatement (Second) of Torts, § 46 cmt. j at 77 (1965)). Nor does the difficulty of placing a monetary value on the damage claim constitute grounds for dismissal of the cause of action. Cf. Berman v. Allan, 80 N.J. 421, 433, 404 A.2d 8 (1979) (discussing calculation of damages for emotional distress arising from birth of child with Down's Syndrome).
A recognition of the recoverability of damages for emotional distress arising out of a breach of a contract for the provision of funeral services accords with the precedent of other jurisdictions. See, e.g., Eidson v. Johns-Ridout's Chapels, Inc., 508 So.2d 697 (Ala.1987) (conditionally permitting assertion of cause of action for emotional distress from breach of contract when funeral home requested that plaintiff view body while floating in formaldehyde); Chelini v. Nieri, 32 Cal.2d 480, 196 P.2d 915 (1948) (affirming award of compensatory damages for emotional distress arising *326 from breach of contract to preserve body and holding when contract relates directly to matters that concern the comfort, happiness and well-being of a party, such damages are available); Fitzsimmons v. Olinger Mortuary Ass'n, 91 Colo. 544, 17 P.2d 535 (1932) (recognizing action for breach of contract and damages for emotional distress arising out of unauthorized use of decedent's image in advertising and holding that when contract contains an implied agreement that nothing would be done to outrage the feelings of the survivors, a legal right to recovery is established by unquestioned authority); Von Seggren v. Smith, 151 Ill.App.3d 813, 104 Ill.Dec. 858, 503 N.E.2d 573 (1987) (affirming award of damages for mental anguish in breach of contract action for return of wrong cremated remains, but not addressing the legal issue of their availability); Meyer v. Nottger, 241 N.W.2d 911 (Iowa 1976) (permitting recovery of damages for mental distress arising out of the breach of a contract to perform funeral services and finding the exercise of proper skill to be an implied contractual term); Flores v. Baca, 117 N.M. 306, 871 P.2d 962 (1994) (holding that emotional distress arising from breach of contract to embalm was perhaps the only damage to be expected and was within the implied contemplation of the parties); Lamm v. Shingleton, 231 N.C. 10, 55 S.E.2d 810 (1949) (finding that breach of personal contract to furnish watertight casket and vault would not result in substantial pecuniary loss, but because widow's peace of mind was the prime consideration for entering the contract, defendants were on notice that breach would probably produce compensable mental suffering); Johnson v. Woman's Hospital, 527 S.W.2d 133 (Tenn.App. 1975) (affirming judgment against hospital for breach of burial contract resulting in mental anguish).
As stated in Flores:
"Burial cases furnish the most obvious example of cases in which the contract for decent treatment of a body seems to guarantee not merely a price but proper respect for feelings of survivors, so that emotional distress damages would seem to be recoverable . . . ." 3 Dan B. Dobbs, Law of Remedies § 12.5(1), at 110 (2d ed.1993). "If a contract is made for the very purpose of providing . . . mental well-being, it is very likely that the defendant must have contemplated damages for a loss of that well-being in the event of breach." Id. § 12.5(1), at 113. Contracts for funeral and burial services are imbued by the very nature of their subject with certain expectations to be implied in fact unless specifically disclaimed. It is to be expected that damages for cognizable harm to the ordinary emotional sensibilities of any family member, in general, and known emotional sensibilities, in particular, will be recoverable for a breach of the funeral provider's obligation to exercise reasonable skill and care. "Consolation being the aim [of a contract for funeral services], what else would result from a breach of the agreement but mental anguish?" Jack Leavitt, The Funeral Director's Liability for Mental Anguish, 15 Hastings L.J. 464, 466 (1964).
[871 P.2d at 967.]
See generally John D. Hodson, Annot., Civil Liability of Undertaker in Connection with Transportation, Burial, or Safeguarding of Body, 53 A.L.R.4th 360 (1987); Gregory G. Sarno, Annot., Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Breach of Service Contract, 54 A.L.R.4th 901 (1987); Charles T. McCormick, Handbook on the Law of Damages § 145 at 595-96 (1935); Dan B. Dobbs, Law of Remedies § 12.5(1) at 790 (2d ed.1993).
*327 We thus reverse the judgment entered in favor of Menorah Chapel on Needle's counterclaim for breach of contract and remand the matter for trial.

IV.
As a final matter, we affirm the award of attorney's fees as a sanction for Needle's failure to be ready to proceed to trial on October 16, 2002, finding that award within the court's discretion. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001); Oliviero v. Porter Hayden Co., 241 N.J.Super. 381, 387, 575 A.2d 50 (App.Div.1990). Although the need for an adjournment was in part the result of the death of Needle's expert, after seeking an adjournment on that basis, Needle did not determine whether his request had been granted, which it was not. As a consequence, Menorah Chapel was required to incur the expense of preparing for a trial that Needle, returned that morning from Israel, was manifestly unprepared to conduct. It is entitled to the compensation that the court awarded as a consequence.
As the result of our reversal of the court's construction of the contract between Menorah Chapel and Needle as divisible and our preversal of its dismissal of Needle's contractual claim, we vacate the award of contractual attorney's fees without prejudice to a suitable award, should Menorah Chapel prevail upon retrial on its breach of contract claim. Such contractually-based fees would not be recoverable if damages awarded to Menorah Chapel were premised upon quantum meruit.
Reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] We have utilized the spelling of this word found in Menorah Chapel's literature.
[2] For instance, an installment contract for the monthly delivery of specified goods might be divisible, whereas a contract for the delivery of a machine and attachments specific to the machine might not if the attachments are not otherwise available.