27 A.3d 953 (2011)
422 N.J. Super. 136
Durgesh GUPTA, Anubhuti Gupta, Sujata Gupta, Rakesh Kamrai, Sachin Garg, individually and as Guardian ad Litem of Pankhuri Garg, Poonam Garg, Sanjeev Agarwalla, individually and as Guardian ad Litem of Shreya Agarwalla, Seema Agarwalla, Sharad Agarwal, individually and as Guardian ad Litem of Priya Agarwal, Shashi Agarwal, Nitin Agarwal, Ajay Prasad and Ranjana Prasad, Plaintiffs-Appellants,
v.
ASHA ENTERPRISES, L.L.C. d/b/a Moghul Express & Catering, Co., Defendant-Respondent.
No. A-3059-09T2.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 2011.
Decided July 18, 2011.
*956 K. Raja Bhattacharya argued the cause for appellants (Bendit Weinstock, P.A., attorneys; Mr. Bhattacharya, Sherri Davis Fowler and William L. Gold, West Orange, on the briefs).
David J. Novack argued the cause for respondent (Budd Larner, P.C., attorneys; Mr. Novack, of counsel; Mr. Novack and Laura A. Siclari, Short Hills, on the brief).
Before Judges WEFING, PAYNE and HAYDEN.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiffs, sixteen Hindu vegetarians, appeal from an order of summary judgment entered against them dismissing their action premised upon allegations of negligence, negligent infliction of emotional distress, consumer fraud, products liability, and breach of express and implied warranties arising when defendant Asha Enterprises, L.L.C. d/b/a Moghul Express & Catering Co. (Mogul Express), an Indian restaurant, filled their order for vegetarian samosas with meat-filled samosas[1] causing spiritual injuries resulting in damages. Plaintiffs explain their injuries and damages as follows:
Hindu vegetarians believe that if they eat meat, they become involved in the sinful cycle of inflicting pain, injury and death on God's creatures, and that it affects the karma and dharma, or purity of the soul. Hindu scriptures teach that the souls of those who eat meat can never go to God after death, which is the ultimate goal for Hindus. The Hindu religion does not excuse accidental consumption of meat products. One who commits the religious violation of eating meat, knowingly or unknowingly, is required to participate in a religious ceremony at a site located along the Ganges River in Haridwar, Uttranchal, India, to purify himself. The damages sought by plaintiffs included compensation for the emotional distress they suffered, as well as economic damages they would incur by virtue of having to participate in the required religious cleansing ceremony in India.
On appeal, plaintiffs argue that Moghul Express's motion for summary judgment was prematurely decided before discovery had commenced and that the motion judge legally erred in her decision dismissing each of plaintiffs' causes of action. We affirm in part and reverse in part.

I.
Viewed most favorably to plaintiffs, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); Rule 4:46-2(c), the motion record discloses the following. According to the certification of plaintiff Durgesh Gupta, filed in opposition to summary judgment, on August 10, 2009, he and plaintiff Sharad Agarwal placed an order for vegetarian samosas at Moghul Express, a restaurant located in Edison, New Jersey. At the time that the order was placed, Gupta and Agarwal advised Mogul Express's employee that they required vegetarian samosas, because they were being purchased for a group of individuals who were strict vegetarians. The two men were informed that they should not be concerned because the restaurant did not make meat-filled samosas. One-half hour later, the men returned to the *957 restaurant to pick up their order and were handed a tray that had written on its top "VEG samosas," and they were again assured of the vegetarian nature of the food.[2]
After plaintiffs had consumed some of the samosas, some plaintiffs became concerned that the samosas might contain meat. They called Moghul Express to verify the food's content, and they were again assured that Moghul did not make meat-filled samosas. Although the plaintiffs continued eating for a time, eventually they determined to return the remaining samosas to Moghul Express to verify their content. Once there, Moghul Express's employee advised them that the samosas, indeed, contained meat. As a consequence of eating the meat-filled samosas, plaintiffs were spiritually injured.
In addition to the certification, the plaintiffs offered a copy of a Moghul Express menu that separately listed appetizers as "Vegetarian" and as "Non-Vegetarian." Chinese appetizers were similarly labeled as "(Veg.)" and "(Non-Veg.)," and the menu contained a separate category labeled "Vegetable Entrée." A listing for "Vegetable Samosa" appeared among the vegetarian appetizers; no listing for meat samosa was present among the non-vegetarian appetizers. Plaintiffs also offered an e-mail from the Director of the Edison Division of Health Food Services to plaintiff, Sachin Garg, stating that he had verified that Moghul Express maintained separate cooking facilities and utensils for vegetarian and non-vegetarian food items.
The record also contains the certification of Kamal Arora, a partner in defendant Asha Enterprises L.L.C. He stated that, on the day in question, Moghul Express received, at approximately the same time, the order by Sharad Agarwal for vegetable samosas and an order from another customer for meat samosas. As directed, thirty minutes later, Agarwal picked up his order, followed by the other customer. However, the other customer decided to eat one of the samosas in his car, realized that he had been given a tray of vegetable samosas, and returned the order to Moghul Express. Upon determining that the two orders had been mixed up, Moghul Express prepared another order of vegetable samosas and delivered it to Agarwal, who accepted it without payment.
Plaintiffs do not dispute the acceptance of the second order of samosas, the fact that they were vegetable-filled, and that no payment for them was made.
When presented with this evidence, the motion judge converted what initially had been a motion to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e) into a motion for summary judgment pursuant to Rule 4:46-2(c), determined that further discovery was not necessary to her decision, and granted the motion. This appeal followed.

II.
In deciding this appeal, we employ the same standard applicable to the motion judge. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). We focus first on plaintiffs' claims based on products liability. The New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, provides:
A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the *958 product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
[N.J.S.A. 2A:58C-2.]
The Supreme Court has explained that "`[w]ith passage of the Product Liability Act, ... there came to be one unified, statutorily defined theory of recovery for harm caused by a product, and that theory is, for the most part, identical to strict liability.'" In re Lead Paint, 191 N.J. 405, 436, 924 A.2d 484 (2007) (quoting William A. Dreier, et al., New Jersey Products Liability & Tort Law, § 1:2-1 (2007)). "The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products. See N.J.S.A. 2A:58C-1b(3) (defining "product liability action")." Id. at 436-37, 924 A.2d 484. Indeed, the definition to which the Court referred provides: "`Product liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1b(3).
Thus, the Court has held that the PLA subsumes claims for a defective product under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to-20, and that Act cannot provide an alternative remedy for injury. Sinclair v. Merck & Co., Inc., 195 N.J. 51, 54, 948 A.2d 587 (2008). It similarly subsumes claims of defect sounding in negligence and breach of implied warranty. Koruba v. Am. Honda Motor Co., Inc., 396 N.J.Super. 517, 531, 935 A.2d 787 (App. Div.2007), certif. denied, 194 N.J. 272, 944 A.2d 32 (2008). On this basis, we affirm the dismissal of the counts of plaintiffs' complaint alleging negligence, violations of the CFA and breach of implied warranty insofar as they are based upon product defect. We defer our discussion of plaintiffs' negligence and CFA claims that are not premised upon product defect until later in this opinion.
The PLA is applicable to food cooked and sold by restaurants. See Koster v. Scotch Assocs., 273 N.J.Super. 102, 110, 640 A.2d 1225 (Law Div.1993); see also Senate Judiciary Committee, Statement to Senate Bill No. 2805 (1987); cf. McGuinness v. Wakefern Corp., 257 N.J.Super. 339, 341, 608 A.2d 447 (Law Div.1991) (action against grocery store by a family that had contracted salmonella poisoning after eating lasagna prepared from ingredients purchased from it); N.J.S.A. 2A:58C-5c (barring award of punitive damages for defective food or food additive that was subject to premarket approval by the federal Food and Drug Administration). However, the PLA is inapplicable as grounds for recovery in the present case because plaintiffs' claims are not related to a defect in the samosas themselves, which were safe, edible and fit for human consumption, but rather to allegations that they were supplied the wrong product. As such, the present case is similar to Universal Underwriters Insurance Group v. Public Service Electric & Gas Company, 103 F.Supp.2d 744 (D.N.J. 2000), a case in which an insurer's cause of action for products liability against a utility company following destruction of a building by fire caused by electricity was dismissed. In reaching the conclusion that dismissal of that claim was warranted, the judge reasoned that "the facts that *959 Plaintiff cites in support of [its claim of product defect] focus not on any defect inherent in the product itself, but rather in PSE & G's alleged failure to act promptly and efficiently in shutting off its electrical service." Id. at 747. Similarly, here, plaintiffs' claims focus on the conduct of Moghul Express's employees in supplying the wrong order, not on any "defect" in the samosas. Thus summary judgment on plaintiffs' claims of products liability and breach of implied warranty is affirmed.

III.
We turn next to plaintiffs' claim that Moghul Express violated the CFA "for fraudulently and/or deceptively advertising the sale of vegetarian food to the Plaintiffs and instead, providing Plaintiffs with non-vegetarian food containing meat products."
The CFA provides:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ... whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.... [N.J.S.A. 56:8-2.]
To make out a prima facie case under the CFA, private plaintiffs must present evidence of (1) "unlawful conduct by defendant;" (2) "an ascertainable loss by plaintiff;" and (3) "a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557, 964 A.2d 741 (2009) (citations omitted). We have held that unlawful conduct can consist of (1) "an affirmative misrepresentation, even if not made with knowledge of its falsity or with an intent to deceive;" (2) "the knowing omission or concealment of a material fact, accompanied by an intent that others rely upon the omission or concealment;" or (3) "a violation of a specific regulation promulgated under the CFA." Stoecker v. Echevarria, 408 N.J.Super. 597, 623, 975 A.2d 975 (App.Div.) (citations omitted), certif. denied, 200 N.J. 549, 985 A.2d 647 (2009); see also Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 389, 929 A.2d 1076 (2007).
In contrast to a claim of an actionable omission, which requires a finding that the defendant acted knowingly, one who makes an affirmative misrepresentation is liable under the CFA even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive. Ji v. Palmer, 333 N.J.Super. 451, 461, 755 A.2d 1221 (App.Div. 2000). Moreover, oral misrepresentations are covered by the CFA to the same extent as written misrepresentations. Chattin v. Cape May Greene, Inc., 216 N.J.Super. 618, 641, 524 A.2d 841 (App.Div.), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987). A misrepresentation must be one that is material to the transaction and that is a statement of fact, found to be false, made to induce the buyer to make a purchase. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607, 691 A.2d 350 (1997).
The CFA specifically enumerates "[a]cts constituting misrepresentation of identity of food," providing:
The identity of said food or food products shall be deemed misrepresented if:
a. Its description is false or misleading in any particular;
b. Its description omits information which by its omission renders the *960 description false or misleading in any particular;
c. It is served, sold, or distributed under the name of another food or food product;
d. It purports to be or is represented as a food or food product for which a definition of identity and standard of quality has been established by custom and usage unless it conforms to such definition and standard.
[N.J.S.A. 56:8-2.10.]
We disagree with the determination of the motion judge that "plaintiffs have not pled sufficient facts to establish an unlawful practice nor are there any facts that could be developed through discovery." We conclude that the allegations of plaintiffs' complaint, together with their supporting evidence, provide prima facie evidence of misrepresentations by Moghul Express's employees under either N.J.S.A. 56:8-2 or N.J.S.A. 56:8-2.10. In particular, we note plaintiffs' allegations that they were assured that Moghul Express did not make meat samosas, that they were repeatedly told that the samosas purchased by them were vegetarian, and that "VEG Samosa" was written on the container in which their order was packaged.
However, we do not find any evidence of an ascertainable loss on plaintiffs' part. In that regard, the CFA provides that "[a]ny person who suffers any ascertainable loss of moneys or property ... as the result of the use or employment by another person of any method, act, or practice declared unlawful under this act... may bring an action" based on the Act, and if successful, the court "shall ... award threefold the damages sustained[,]" and "the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19.
Adequately alleging an ascertainable loss is a prerequisite for maintenance of a private action to remedy a violation of the CFA. Weinberg v. Sprint Corp., 173 N.J. 233, 251, 801 A.2d 281 (2002); Laufer v. U.S. Life Ins. Co., 385 N.J.Super. 172, 186, 896 A.2d 1101 (App.Div.2006) (holding that the claim of loss is "purely a `standing' requirement" and that "[t]he Act does not require a private plaintiff's claim of ascertainable loss to `ultimately prove successful.'") (citations omitted). In the present matter, plaintiffs have not pled or provided evidence of any "loss of moneys or property." Indeed, it would be difficult for them to do so, since unrefuted evidence demonstrates that, following recognition by the restaurant of its mistake, Moghul Express furnished an order of conforming samosas to plaintiffs without cost.
Plaintiffs claim that they have sufficiently plead ascertainable loss by seeking damages in the amount of the cost of a trip to India to undergo a purification ritual. However, what they are seeking is the cost of cure for an alleged spiritual injury that cannot be categorized as either a loss of moneys or property. We recognize in this regard that in Cox v. Sears Roebuck & Co., 138 N.J. 2, 22, 647 A.2d 454 (1994), the Supreme Court, in dictum, held that the projected costs of repair of improperly installed kitchen fixtures and wiring constituted an "ascertainable loss." However, the cost of cure in that circumstance was the result of the loss of the value of property that had been rendered unsafe and unsightly by the work of the contractor employed by Sears. Here, an underlying loss of the value of property cannot be demonstrated. Absent supporting precedent, we are unwilling to expand the definition of ascertainable loss to cover the injuries alleged by plaintiffs in this matter. Indeed, case law demonstrates that such a step would be improper. See Gennari, supra, 148 N.J. at 612-13, 691 A.2d 350 *961 (holding that non-economic losses are not recoverable under the CFA); Cole v. Laughrey Funeral Home, 376 N.J.Super. 135, 144-45, 869 A.2d 457 (App.Div.2005) (holding that damages for emotional distress are not recoverable as ascertainable losses under the CFA). Because plaintiffs are unable to present sufficient evidence of an ascertainable loss to survive a motion for summary judgment, Laufer, supra, 385 N.J.Super. at 187, 896 A.2d 1101, we affirm the dismissal of plaintiffs' CFA claim.

IV.
We next address plaintiffs' claims of negligence resulting in spiritual injury and negligent infliction of emotional distress, which we regard as essentially equivalent in their import. Those claims were dismissed by the motion judge on the ground that plaintiffs could not establish a duty owed to them by Moghul Express that had been breached by it. The judge determined that she would "not create new laws that protect religious dietary concerns when there is no precedent for such an act." We affirm but on somewhat different grounds.
A duty is an obligation imposed by law requiring one party "to conform to a particular standard of conduct toward another." Prosser & Keeton on Torts: Lawyer's Edition 356 (W. Page Keeton ed., 5th ed. 1984). The recognition or establishment of a legal duty in tort law is generally a matter for the court to decide. Clohesy v. Food Circus Supermarkets, 149 N.J. 496, 502, 694 A.2d 1017 (1997). The question of whether a duty exists is generally analyzed in light of considerations of fairness and public policy that "`involve[] identifying, weighing, and balancing several factorsthe relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Carter Lincoln-Mercury, Inc. v. EMAR Group, 135 N.J. 182, 194, 638 A.2d 1288 (1994) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993)).
The ability to foresee injury to a potential plaintiff does not in itself establish the existence of a duty. Goldberg v. Housing Auth., 38 N.J. 578, 583, 186 A.2d 291 (1962). However, foreseeability is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate. Carter, supra, 135 N.J. at 194, 638 A.2d 1288 (discussing "foreseeability as a `duty' determinant"). "Subsumed in the concept of foreseeability are many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the nature of the risk, and the ability and opportunity to exercise care." Ibid.
In a case such as this in which negligent infliction of emotional distress is alleged "`[l]iability should depend on the defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted.'" Decker v. Princeton Packet, Inc., 116 N.J. 418, 429, 561 A.2d 1122 (1989) (quoting Caputzal v. The Lindsay Co., 48 N.J. 69, 76, 222 A.2d 513 (1966)). The Court has held:
While the foreseeability of injurious consequences is a constituent element in a tort action, foreseeability of injury is particularly important in the tort of negligent infliction of emotional harm. This reflects the concern over the genuineness of an injury consisting of emotional distress without consequent physical injury. In these situations, there must be "an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *962 Prosser & Keeton, supra, § 54 at 362. In emotional distress cases, there has been "a constant concern about the genuineness of the claim."
[Id. at 429-30, 561 A.2d 1122 (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 365, 544 A.2d 857 (1988)).]
If foreseeability of injury to a party is established, the court
must decide whether considerations of fairness and policy warrant the imposition of a duty. see Weinberg v. Dinger, 106 N.J. 469, 485 [524 A.2d 366] (1987) ("Whereas the magnitude and likelihood of potential harm are objectively determinable, the propriety of imposing a duty of care is not."); Kelly v. Gwinnell, 96 N.J. 538, 544 [476 A.2d 1219] (1984) (stating that action creating unreasonable risk of foreseeable harm resulting in injury is not enough to sustain negligence cause of action; court must also make value judgment based on analysis of public policy that actor owed injured party duty of reasonable care (citing Palsgraf v. Long Island R.R. [248 N.Y. 339], 162 N.E. 99 (1928))).
[Carter, supra, 135 N.J. at 195, 638 A.2d 1288.]
Significantly, in New Jersey, the tort of negligent infliction of emotional distress has been recognized only in limited circumstances. In Falzone v. Busch, 45 N.J. 559, 569, 214 A.2d 12 (1965) the Court held that a plaintiff could recover for emotional injury, even if unaccompanied by physical impact, provided that the defendant's negligent conduct placed the plaintiff in "a reasonable fear of immediate personal injury." Ibid. "[A]fter Falzone, courts considered emotional distress that accrued to any plaintiff who was within the `zone of risk' created by the negligent conduct to be a foreseeable damage arising from the negligent conduct, so long as substantial bodily injury or sickness also resulted from the fright." Jablonowska v. Suther, 195 N.J. 91, 103, 948 A.2d 610 (2008).
A cause of action for negligent infliction of emotional distress has also been recognized in "bystander" cases in which the defendant's negligent conduct caused death or serious bodily to one with whom the bystander shared a marital or intimate family relationship, the bystander contemporaneously observed the death or injury, and the plaintiff suffered severe emotional distress. Portee v. Jaffee, 84 N.J. 88, 97, 417 A.2d 521 (1980); see also Carey v. Lovett, 132 N.J. 44, 62, 622 A.2d 1279 (1993) (recognizing claim of emotional distress arising out of injury to or death of a fetus). However, the Court has limited the independent tort of negligent infliction of emotional distress to these two basic fact patterns. Jablonowska, supra, 195 N.J. at 104, 948 A.2d 610. The claims of plaintiffs in this case fit into neither of these categories.
Further, in the case of a Portee claim, the plaintiff need not demonstrate that the emotional distress resulted in physical injury, but only that it resulted in severe mental or emotional harm, whereas a plaintiff asserting a Falzone-type claim must demonstrate that his or her emotional distress resulted in "substantial bodily injury or sickness." Falzone, supra, 45 N.J. at 569, 214 A.2d 12. See also Abouzaid v. Mansard Gardens Assoc's L.L.C., 207 N.J. 67, 77-79 and n. 4, 23 A.3d 338 (2011). Even if we were to find plaintiffs' negligence claims cognizable, they have offered no proof in connection with Mogul Express's motion for summary judgment that would satisfy the relevant damages standard, despite the fact that such proof, if it exists, lies within their control and does not require the opportunity to conduct discovery. Cf. State v. Cummings, 321 N.J.Super. 154, 170, 728 A.2d 307 (App.Div.) (in the context of *963 a petition for post-conviction relief, holding that a petitioner cannot rely on bald assertions, but must support his claims with certifications, affidavits, or other proof), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999). As a consequence, we find that plaintiffs' negligence claims were properly dismissed.

V.
As a final matter, we turn to plaintiffs' claims of breach by Moghul Express of its express warranty of fitness of the samosas sold to plaintiffs.
The Uniform Commercial Code provides:
(1) Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
....
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty....
[N.J.S.A. 12A:2-313.]
Our review of the record on summary judgment leads us to conclude that plaintiffs have presented prima facie evidence of a warranty by employees of Moghul Express that the samosas sold to them were vegetarian.
Provisions of N.J.S.A. 12A:2-715 governing consequential damages permit such an award for
(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
(b) injury to person or property proximately resulting from any breach of warranty.
See also Collins v. Uniroyal, Inc., 126 N.J.Super. 401, 406-07, 315 A.2d 30 (App. Div.1973) (affirming award of consequential damages arising from the death of entertainer in car accident caused by blow out of tire covered by express warranty), aff'd, 64 N.J. 260, 315 A.2d 16 (1974).
In this case, plaintiffs have alleged emotional or spiritual injury sustained as the result of Moghul Express's breach of express warranty. We have recognized, in a non-U.C.C. context, the recoverability of damages for emotional distress arising from a breach of contract for the provision of funeral services when the promised services of a shomerim were only partially supplied. Menorah Chapels v. Needle, 386 N.J.Super. 100, 116-18, 899 A.2d 316 (App. Div.), certif. denied, 188 N.J. 489, 909 A.2d 724 (2006). There, we determined that the difficulty of calculating such damages did not constitute grounds for dismissal of the plaintiff's claim. Id. at 116, 899 A.2d 316. We find that precedent applicable here.
A more difficult issue is presented in connection with plaintiffs' claim for recovery of the costs required for the purification of their souls in India. To prevail on that consequential damage claim, plaintiffs must establish that such damages were reasonably foreseeable at the time that the contract was entered into. Donovan v. Bachstadt, 91 N.J. 434, 444, 453 A.2d 160 (1982) (citing Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854)).

*964 Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive, in respect of such breach, should be such as may fairly be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. [Hadley, supra, 9 Ex. at 354, 156 Eng. Rep. at 151.]
"Further the loss must be a reasonably certain consequence of the breach although the exact amount of the loss need not be certain." Donovan, supra, 91 N.J. at 445, 453 A.2d 160 (citing Kozlowski v. Kozlowski, 80 N.J. 378, 388, 403 A.2d 902 (1979); Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957)).
Because discovery has not commenced in this matter, we cannot determine what consequential damages were foreseen at the time of the sale of the samosas in the event of a breach. We thus reverse summary judgment on plaintiffs' breach of express warranty claim and remand for further proceedings.[3]
We decline to address at this time Moghul Express's argument that any liability on its part is limited to the claims of the person who placed the order for the samosas, regarding the resolution of that matter to be dependent on future discovery.
Affirmed in part; reversed in part and remanded.
NOTES
[1] Samosas are fried or baked triangularly-shaped stuffed pastries popular as snacks in southeast Asia.
[2] A photograph appended to the certification purports to show the legend on the aluminum food container. Although the word "samosa" is visible, "VEG" is not. However, it may have been obscured by wrinkles in the aluminum in the area where "VEG" was written.
[3] At present, it does not appear that resolution of the issues in this case will implicate religious doctrine or ministerial functions or result in regulatory entanglement in church matters, and that it can be determined by use of neutral principles. See Menorah Chapels, supra, 386 N.J.Super. at 109, 899 A.2d 316. However, we do not foreclose further consideration of this issue, should it be warranted.